# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | |
|---|---|
| ORTHOPEDIATRICS CORP., ORTHEX, LLC, and VILEX LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>WISHBONE MEDICAL, INC. and NICK A. DEETER,<br><br>    Defendants. | Case No. 3:20-cv-000929 |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION
## TO DISMISS PURSUANT TO FRCP 12(b)(1) and 12(b)(6)

TABLE OF CONTENTS

I.      INTRODUCTION AND FACTUAL BACKGROUND ........................................1

II.     STANDARDS OF REVIEW .................................................................................4

   A.  Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1)....................4

   B.  Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6)....................5

III.    ARGUMENT .........................................................................................................6

   A.  Counts I and II of the FAC Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) on the Grounds Plaintiffs Lack Standing................................................6

      1.  Plaintiffs Lack Prudential Standing Having No Valid Claim of Ownership .......6

      2.  Plaintiffs Lack Constitutional Standing Because No Acts of Infringement Have Occurred ..........................................................................................................8

   B.  Count III of the FAC for Unfair Competition and False Advertising Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6). ...................................11

   C.  Count IV of the FAC for Breach of Contract Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6). ........................................................................18

   D.  Count V of the FAC for Defamation *Per Se* Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6). .............................................................................22

   E.  Count VI of the FAC for Tortious Interference with Contractual Relationships Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6). .................26

   F.  Count VII of the FAC for Tortious Interference with Prospective Contractual Relationships Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6).....................................................................................................................28

IV.    CONCLUSION...................................................................................................30

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020 .................................................. 9

*Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420 ........................................................ 24

*Allen v. Wright*, 468 U.S. 737 ............................................................................................. 7

*Ammerman v. Sween*, 54 F.3d 423 ...................................................................................... 18

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 ............................................... 4, 5

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348 ....................... 9

*Ashcroft v. Iqbal*, 129 S. Ct. ........................................................................................... 24

*Atkins v. City of Chicago*, 631 F.3d 823 ........................................................................... 5

*BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081 .................................................. 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 ........................................................................ 5

*Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286 ...................... 29

*Briggs v. Clinton County Bank & Trust Co.*, 452 N.E.2d 989 ....................... 16, 17, 20

*Buztronics, Inc. v. Theory3, Inc.*, 2005 U.S. Dist. LEXIS 46967 ................................. 12

*Chrysler Motors v. Graham*, 631 N.E.2d 7 ..................................................................... 17

*Columbus Specialty Surgery Ctr. v. Southeastern Ind. Health Org.*, 22 N.E.3d 665 ................. 23

*Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263 ....................... 15

*Doe v. County of Montgomery*, 41 F.3d 1156 .................................................................. 8

*Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697 ............................. 11

*DSU Med. Corp. v. JMS Co.*, 471, F.3d 1293, 1306 (Fed. Cir. 2006) ........................ 10

*Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263 ............................... 10

*Economation, Inc. v. Automated Conveyor Sys., Inc.*, 694 F. Supp. 553 ................... 27

*Eli Lilly and Co. v. Medtronic, Inc.*, 496 U.S. 661 ...................................................... 10

*Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238 .......................................................... 16, 17

*Flintridge Station Ass'n v. American Fletcher Mortgage Co.*, 761 F.2d 434 ............. 27

*General Auto Serv. Station v. The City of Chicago*, 2004 U.S. Dist. LEXIS 3800 ..................... 19

*Hartman v. Keri*, 883 N.E.2d 774 ............................................................................... 16, 17

*Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871 ......................................................... 30

*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 ............. 27

*Illinois v. City of Chi.*, 137 F.3d 474 ............................................................................. 4

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567 ............................................ 7

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427 ...................................... 11

*Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770 ................................................................................. 10

*KatzCrank v. Haskett*, 843 F.3d 641 ........................................................................................... 6

*Kyles v. J.K. Guardian Security Services, Inc.*, 222 F.3d 289 ..................................................... 8

*L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc.*, 9 F.3d 561 ...................................................... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 ....................................................................... 8, 11

*Maine Springs, LLC v. Nestlé Waters N. Am., Inc.*, No. 2:14-CV-00321-GZS .......................... 12

*Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925 .................................................................. 12

*McCauley v. City of Chicago*, 671 F.3d 611 ................................................................................ 5

*Melton v. Ousley,* 925 N.E.2d 430 ............................................................................................. 26

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016 .............................................. 6, 7

*Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 ...................................................................... 4

*Morrow v. Microsoft, Corp.*, 499 F.3d 1332 ............................................................................... 6

*Mourning v. Allison Transmission,* 72 N.E.3d 482 .................................................................... 27

*Muhammad v. Chicago Park Dist.*, No. 04 C 5183, No. 06 C 0308 ........................................... 22

*Munson v. Gaetz*, 673 F.3d 630 .................................................................................................... 5

*Myers v. County of Lake*, 30 F.3d 847 ....................................................................................... 19

*Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026 ...................................... 7

*Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304 ..................................................... 7, 9

*Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495 ................................................................. 5

*Pinpoint, Inc. v. Amazon.com, Inc.*, 347 F. Supp. 2d 579 ........................................................... 8

*Rain v. Rolls-Royce Corp.*, 626 F.3d 372 .................................................................................. 21

*Rice v. Hulsey*, 829 N.E.2d 87 ................................................................................................... 29

*Rogers v. Fort Wayne Police Dep't*, 2007 U.S. Dist. LEXIS 35946 .......................................... 22

*Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp ....................................................................... 13

*Stahl v. Kincade,* 135 Ind. App. 699 .......................................................................................... 16

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 ...................................................... 7

*Swanson v. Citibank, N.A.*, 614 F.3d 400 .................................................................................... 5

*Tenta v. Guraly,* 221 N.E.2d 577 ............................................................................................... 28

*Trail v. Boys and Girls Clubs of Nw. Ind.*, 845 N.E.2d 130 ............................................... 24, 25

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 .................................................... 18, 19

*United Phosphorus*, 322 F.3d at 946 ........................................................................ 4

United States *v. Clark*, 2010 U.S. Dist. LEXIS 9712 ........................................ 19, 23

*United States v. Hays*, 515 U.S. ............................................................................... 7

*Van Eaton v. Fink*, 697 N.E.2d 490 ......................................................................... 16

*Westward Coach Mfg. Co. v. Ford Motor Co.*, 388 F.2d 627 .................................. 13

*Wilkins v. Hyde*, 142 Ind. 260 ................................................................................. 16

*Winkler v. V. G. Reed & Sons, Inc.*, 619 N.E.2d 597 ............................................... 27

*Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228 .............................................. 26

*Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239 ...................... 28

### Statutes

15 U.S.C. § 1125 ...................................................................................................... 11

28 U.S.C. § 1338 ........................................................................................................ 7

28 U.S.C. § 1367(a) .................................................................................................. 18

35 U.S.C. § 271(a) ...................................................................................................... 9

35 U.S.C. § 271(b) .................................................................................................... 10

35 U.S.C. § 271(c) .................................................................................................... 10

35 U.S.C. §§ 100(d) .................................................................................................... 6

Defendants, WishBone Medical, Inc., and Nick A. Deeter, by and through the undersigned counsel, pursuant to Federal Rules of Civil Procedure 12(b)(1), (6), file this Brief in Support of their Motion to Dismiss Counts I through VII of Plaintiffs' First Amended Complaint ("FAC") [Dkt. 33].

## I.   INTRODUCTION AND FACTUAL BACKGROUND

1.   WishBone Medical, Inc. ("WishBone") is a Warsaw, Indiana, based pediatric orthopedic company focused globally on the unmet needs of children suffering from orthopedic issues and providing anatomically appropriate, innovative implants and instruments to surgeons and their patients.

2.   Nick A. Deeter ("Deeter"), the co-founder of WishBone, has served since 2017 as Chairman of the Board and Chief Executive Officer. Deeter founded Plaintiff, OrthoPediatrics, Corp. ("OrthoPediatrics"), and for 8 years, served as Chairman of the Board, Chief Executive Officer and Managing Director.

3.   Tamer Isin ("Isin") is a native of Turkey and a principal of IMED Surgical, LLC ("IMED"), the plaintiff in presently-pending litigation against OrthoPediatrics and Orthex, as more particularly described below.

4.   Wishbone ExFx, LLC ("Wishbone LLC"), is an Oklahoma limited liability company, which owns an interest in IMED Surgical, LLC. One of Wishbone LLC's members is Nick Deeter.  Other than having Nick Deeter as in interest holder, IMED and WishBone Medical, Inc. are not affiliated entities.

5.   Between 2007 and 2009, Isin developed a method involving surgical fixators and software for use by orthopedic surgeons to re-align broken and deformed bones. Isin further developed novel software that could both automatically acquire the required data from x-rays and, more significantly, automatically *calculate* the required fixator strut lengths. Under Isin's

method, the surgeon "pointed and clicked" a cursor on defined points of an x-ray and the software did the rest.

6.      In addition to his software, Isin also developed a fixator with eight struts that he named the "Adam Frame." The Adam Frame in combination with Isin's software was called the "Adam Frame Computer Aided External Fixator."

7.      Isin applied for a Turkish patent on his "point and click method" in January 2011, which issued August 2015 as Turkish Patent TR2012 01064 B. Isin also filed a Patent Cooperation Treaty ("PCT") application in Turkey on January 8, 2011, which published in August 2012. Isin registered his software with the United States Copyright Office in 2010, receiving copyright registration, TXu001721872.

8.      Isin moved to the U.S. in 2007 and sought a prominent U.S. orthopedic surgeon to help him develop, refine and commercially promote his "Adam Frame Computer Aided External Fixator."

9.      In 2010, Isin met Dror Paley ("Paley"), a world-renowned orthopedic surgeon practicing in Palm Beach County, Florida, and demonstrated his novel "point and click" method to Paley which resulted in Paley, through his now dissolved company, Paley LLC, entering into a written consulting agreement with Isin's company, IMED Surgical, LLC. A copy of the consulting agreement is attached as Exhibit A.

10.     Under the consulting agreement, Paley and Paley LLC promised to help IMED develop, refine and commercially facilitate the "Adam Frame Computer Aided External Fixator," re-branded as the "Adam Frame with Paley Method."

11.     Paley ultimately disavowed his promises to IMED.  In 2013, while still engaged as IMED's consultant, Paley assigned to Plaintiff, Orthex, LLC ("Orthex") any invention and

2

patent he was obligated to disclose and assign to IMED under the consulting agreement. Paley then filed successive patent applications for Orthex's benefit which ultimately ripened into United States Patent 10,258,377 ("the '377 Patent"), entitled: "Point and Click Alignment Method for Orthopedic Surgeons, and Surgical and Clinical Accessories and Devices."

12.     Isin discovered in July 2019 that Paley sold Orthex to OrthoPediatrics, including the '377 Patent, for some portion of $60 million.

13.     On October 5, 2020, IMED filed an action in the Southern District of Florida styled *IMED Surgical, LLC v. Orthex, LLC; Dror Paley; OrthoPediatrics Corp.;* et al. No. 1:20-cv-24065 (the "S.D. Fla. Action"), alleging inter alia, breach of the consulting agreement, and for declaratory judgment that IMED owns the '377 Patent.

14.     On October 15, 2020, IMED, voluntarily dismissed the S.D. Fla. Action, due to IMED's learning of jurisdictional issues that required filing in state court.

15.     On the same day as the dismissal of the S.D. Fla. Action, IMED filed a substantially identical action in the Circuit Court for Broward County, Florida, styled *IMED Surgical, LLC v. Orthex, LLC; Dror Paley; Dror Paley, LLC; OrthoPediatrics Corp.;* et al. No. CACE-20-017135 (the "Florida Lawsuit"), also alleging breach of the consulting agreement, and for declaratory judgment that IMED owns the '377 Patent.[1] Ex. B

16.     On information and belief, the instant lawsuit was filed by Plaintiffs in response to and in retaliation for the filing of the S.D. Fla. Action and subsequent filing of the Florida Lawsuit.

---

[1] While Plaintiffs point to the voluntary dismissal of the S.D. Fla. Action throughout the FAC in an apparent effort to gain some unknown advantage, Plaintiffs wholly ignore the filing of the Florida Lawsuit, which occurred on the same date as the dismissal of the S.D. Fla. Action and five days before the filing of the FAC. The omission suggests a deliberate effort by Plaintiffs to mislead this Court into assuming that there is no action pending against Plaintiffs in Florida involving competing claims to intellectual property.

17.    WishBone and OrthoPediatrics are also parties to that certain pending action captioned *OrthoPediatrics Corp. v. Robert von Seggern & WishBone Medical, Inc.,* Whitley Superior Court, Cause No. 92D01-1705-PL-000150, filed May 15, 2017 ("Whitley Superior Court Action").

18.    Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Instead of filing a responsive brief to that motion, Plaintiffs filed the FAC [Dkt. 33] which added Vilex LLC as a third Plaintiff.  The FAC included for the first time Count II seeking declaratory judgment of infringement. The FAC appears to be an attempt to cure the defects by Plaintiffs, as will be shown below, the FAC remains defective as to all Counts.

## II.    STANDARDS OF REVIEW

### A.    Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(1)

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(1) when the court lacks jurisdiction over the subject matter. "Subject matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further." *Illinois v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998).  The standard of review for a Rule 12(b)(1) motion to dismiss depends on the purpose of the motion. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). If a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction (a facial challenge), the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See *Id.*; *United Phosphorus*, 322 F.3d at 946. If, however, the defendant denies or controverts the truth of the jurisdictional allegations (a factual challenge), the Court may look beyond the pleadings and view any competent proof submitted by the parties to determine if the plaintiff has established jurisdiction by a preponderance of the evidence. See *Apex Digital*, 572 F.3d at 443-44; *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006). As noted

4

by the Third Circuit:

> The factual attack, however, differs greatly for here the trial court may proceed as it never could under [Rule 12(b)(6) or Rule 56]. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.
> *Apex Digital*, citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d

Cir.1977).

This Motion is a <u>factual</u> challenge as to Counts I and II, and primarily a <u>facial</u> challenge

as to Counts III through VII.

**B.    Motion to Dismiss Under Federal Rules of Civil Procedure 12(b)(6)**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege 'enough

facts to state a claim to relief that is plausible on its face.'" *Park Pet Shop, Inc. v. City of*

*Chicago*, 872 F.3d 495, 499 (7th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). The Court will not accept legal conclusions or conclusory allegations as sufficient

to state a claim for relief. See *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).

Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the

speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility

determination is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.  Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)

("[T]he complaint taken as a whole must establish a nonnegligible (sic) probability that the

claim is valid, though it need not be so great a probability as such terms as 'preponderance of the

evidence' connote."); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff

must give enough details about the subject matter of the case to present a story that holds

together."). When deciding a motion to dismiss under Rule 12(b)(6), the court takes all facts

alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *KatzCrank v. Haskett*, 843 F.3d 641, 646 (citing *Iqbal*, 556 U.S. at 662, 663); *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

As described more particularly below, Plaintiffs have failed to plead sufficient facts in order to allow this Court to exercise supplemental jurisdiction[2] over state law claims in Counts III through VII and failed to state claims for which the Court may grant relief with respect to Counts III through VII.

## III.    ARGUMENT

### A.    Counts I and II of the FAC Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) on the Grounds Plaintiffs Lack Standing.

In the context of patent infringement suits, there are two limitations on standing: prudential and constitutional. See *Morrow v. Microsoft, Corp.*, 499 F.3d 1332, 1338-39 (Fed. Cir. 2007) (differentiating prudential and constitutional standing). A Plaintiff "must meet both constitutional and prudential standing" to pursue a case. *Id.*  As will be shown below, Plaintiffs lack standing on both grounds: 1) the Plaintiffs are not the rightful owners of the '377 Patent (prudential standing); and 2) no actions constituting infringement of the '377 patent have occurred in the United States (constitutional standing).

### 1.    Plaintiffs Lack Prudential Standing Having No Valid Claim of Ownership

Only the patentee or its assignee has standing to bring an infringement suit. 35 U.S.C. §§ 100(d), 281; *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017-18 (Fed. Cir.

---

[2] The FAC uses the term "pendent jurisdiction;" however, when 28 U.S.C. § 1367 was enacted in 1990, "supplemental jurisdiction" replaced the former case law definitions of "pendent jurisdiction" and "ancillary jurisdiction." Defendants will, therefore, use the term "supplemental jurisdiction" in this Motion.

2001). The term patentee can also mean an exclusive licensee if that exclusive licensee "holds all substantial rights in the patent." *Mentor H/S v. Med. Device Alliance* at 1017 (citing *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998)). Prudential limitations on standing include the general prohibition of a litigant's raising another person's legal rights. *Allen v. Wright*, 468 U.S. 737, 751, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984). The party invoking federal jurisdiction bears the burden of establishing the elements of standing and ultimately must support its allegations with competent proof of jurisdictional facts. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-04, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998); *Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.*, 52 F.3d 1026, 1032-33 (Fed. Cir. 1995). The plaintiff in a patent infringement suit has the burden of proving that it owned the patent on which its suit is based when it filed the complaint. *United States v. Hays*, 515 U.S. 737, 743, 132 L. Ed. 2d 635, 115 S. Ct. 2431 (1995). Unless this condition is satisfied, the district court lacks subject-matter jurisdiction. See *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003). "To invoke the jurisdiction of a federal court under [28 U.S.C.] § 1338, it is necessary that plaintiff allege facts that demonstrate that he, and not the defendant, owns the patent rights on which the infringement suit is premised. Furthermore, this allegation of ownership must have a plausible foundation." *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1571-72 (Fed. Cir. 1997). In its analysis, "the court must consider as a whole the substance of the claim in addition to the language of the complaint, and may also consider jurisdictional facts outside the pleadings." *Id*. at 1576. As set out above, Paley and Paley LLC were contractually obligated under the consulting agreement to assign any acquired patent rights to IMED. Ex. A. This obligation includes the '377 Patent. Before the instant case was filed, IMED was first to challenge Plaintiffs' alleged ownership by filing the S.D. Fla. Action and subsequent Florida

Lawsuit.  The Florida Lawsuit is still ongoing and none of the Plaintiffs can rightfully assert ownership of the '377 that would provide standing to pursue the present suit.

In *Pinpoint, Inc. v. Amazon.com, Inc*., 347 F. Supp. 2d 579 (N.D. Ill. E.D. 2004), the plaintiff sued Amazon for infringement of 2 business-method patents. Amazon challenged the plaintiff's standing to bring the case. Amazon argued that although the plaintiff was the inventor, a university was the owner of the patent under a sponsored research agreement. The Court held that the patented inventions were the product of sponsored research and therefore were, under the agreement, the property of the university, and the inventor could not vest ownership rights in third parties without the university's authorization. *Pinpoint*, 347 F. Supp. 2d at 585. As in *Pinpoint*, Dror Paley and Paley LLC were obligated under the subject Consulting Agreement to assign any rights in intellectual property, including the '377 Patent, to IMED. Plaintiffs cannot obtain an ownership right in the '377 Patent by virtue of Dror Paley's breach of the Consulting Agreement. See *Pinpoint*, 347 F. Supp. 2d at 585.

## 2.      Plaintiffs Lack Constitutional Standing Because No Acts of Infringement Have Occurred

To establish constitutional standing, the plaintiff must show: "(1) that it has suffered an 'injury in fact;' (2) that this injury is 'fairly traceable' to defendants' alleged conduct; and (3) that a favorable judicial decision would likely redress the injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992); *Kyles v. J.K. Guardian Security Services, Inc*., 222 F.3d 289, 293-94 (7th Cir. 2000). An "injury in fact" is an invasion of a legally-protected interest that is "concrete and particularized" and "actual or imminent and not merely conjectural or hypothetical." *Doe v. County of Montgomery*, 41 F.3d 1156, 1159 (7th Cir. 1994), citing *Lujan*, 504 U.S. at 560. "Article III standing . . . generally must be present at the

inception of the lawsuit." *Paradise Creations, Inc. v. UV Sales, Inc*., 315 F.3d 1304, 1308 (Fed. Cir. 2003) (citing *Lujan*, 504 U.S. at 560)).

Plaintiffs lack constitutional standing because Plaintiffs cannot allege any "injury in fact." Plaintiffs must plausibly allege use of the claimed method to substantiate a case of patent infringement. Assuming *arguendo* that use of the Accused System would infringe the '377 Patent, no infringing use has occurred. "[F]or a party to be liable for direct patent infringement under 35 U.S.C. § 271(a), that party must commit all the acts necessary to infringe the patent, either personally or vicariously." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013). The "single actor" rule finds "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).

Plaintiffs attempt to build their case for direct infringement in ¶¶ 71-78 of the FAC. It is not factually possible for WishBone to directly infringe the '377 patent. The '377 Patent claim requires both "an orthopedic professional" perform the steps **and** "at least two medical images of a patient" be taken. At a minimum, this requires an orthopedic professional and a patient to infringe the '377 Patent. Plaintiffs would have to plausibly allege that WishBone is an orthopedic medical care facility having an orthopedic professional that has treated at least one patient. As first stated in Defendant's Motion to Dismiss (Dkt. 29) and restated here, WishBone is not a medical care facility and has not treated patients. Ex. C - Deeter Dec. ¶¶ 8, 12. Thus, Plaintiffs have no constitutional standing on direct infringement because WishBone has not, and cannot infringe the '377 patent under the "single actor" rule.   Therefore, their claims of direct infringement must be dismissed under Fed. R. Civ. P. 12(b)(1).

Induced infringement under 35 U.S.C. § 271(b) requires that "whoever actively induces infringement of a patent shall be liable as an infringer." Contributory infringement is knowingly contributing to the infringing activities of others. 35 U.S.C. § 271(c). Despite their differences, both share the same requirement – an underlying act of direct infringement. "The patentee always has the burden to show direct infringement for each instance of indirect infringement." *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement."). There must be an underlying direct infringement to assert induced infringement. *DSU Med. Corp. v JMs Co.*, 471 F.3d 1293, 1245 (Fed. Cir. 2006). Without any underlying act of direct infringement, induced or contributory infringement claims fail. *Dyancore* at 1272. In ¶¶ 79-85 of the FAC, Plaintiffs accuse WishBone of both contributory and induced infringement.  At the time the lawsuit was filed, and as of the filing of this Brief, there have been no patients treated with the Accused Product in the United States. Deeter Dec. ¶12 There have been no sales; there is not even a scheduled release date. Deeter Dec. ¶¶10-11 Without anyone using the Accused Product, there is no possibility of an underlying act of infringement.

Plaintiffs mention WishBone's FDA approval on the Accused System [FAC, Dkt. 33, ¶¶ 7, 45-46, 83, 94], however, activity related to obtaining FDA clearance cannot be the basis for direct infringement. As laid out in *Eli Lilly v. Medtronic*, activities related to submitting a medical device for clearance by the FDA is not patent infringement. *Eli Lilly and Co. v. Medtronic, Inc.*, 496 U.S. 661, 678 (1990). As such, mention of this irrelevant allegation does not provide standing under Fed. R. Civ. P. 12(b)(1).

As stated above, standing requires **both** prudential standing in the form of patent ownership and constitutional standing in the form of actual injury. If either is lacking, the present case is subject to being dismissed under Fed. R. Civ. P. 12(b)(1). In this case, Plaintiffs have neither patent ownership nor an actual injury arising from use of the claimed invention. Therefore, this Court must dismiss Counts I and II for lack of standing under Fed. R. Civ. P. 12(b)(1).

**B.      Count III of the FAC for Unfair Competition and False Advertising Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6).**

**1.      Dismissal Pursuant to Rule 12(b)(1).**

Plaintiffs lack standing to assert claims for unfair competition and false advertising under the Lanham Act. Section 43(a) of the Lanham Act (15 U.S.C. § 1125), governs unfair competition and false advertising claims, requires a party demonstrate that it "has a reasonable interest to be protected against conduct violating the Act." *Dovenmuehle v. Gilldorn Mortgage Midwest Corp.*, 871 F.2d 697, 700 (7th Cir. 1989). A party bringing suit must assert "a discernable competitive injury." *L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc*., 9 F.3d 561, 575 (7th Cir. 1993). See also *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co*., 188 F.3d 427 (7th Cir. 1998).

As stated in Section A above, none of the Plaintiffs are the owner of the '377 Patent and, therefore, lack "a reasonable interest to be protected." *Dovenmuehle, supra.* In addition, since WishBone does not sell any infringing products in the U.S., Plaintiffs are unable to allege and prove "a discernable competitive injury." *Lujan, supra*.

A federal court recently held that a company that had the permits, equipment and facilities necessary for bottled water operations, but had not yet begun operations, did not have Article III standing, let alone Lanham Act standing, to bring Lanham Act claims against an

established bottled water company. The plaintiff company did not allege Defendant had ever "marketed any bottled water or that it [was] prepared to sell bottled water at [that] time." The defendant's "allegedly false advertising or false designation of origin [could not] have harmed" the plaintiff company by diverting any customers because the plaintiff company had not yet begun to "offer bottled water" to anyone. *Maine Springs, LLC v. Nestlé Waters N. Am., Inc*., No. 2:14-CV-00321-GZS, 2015 U.S. Dist. LEXIS 33259, 2015 WL 1241571, at *6 (D. Me. Mar. 18, 2015). See also *Martin v. Wendy's Int'l, Inc*., 183 F. Supp. 3d 925 (N.D. Ill. May 2, 2016).

In the present case, the same is also true. WishBone has not sold any allegedly infringing products in the U.S. and, therefore, WishBone's alleged unfair competition or false advertising could not have harmed Plaintiffs.  Further, WishBone does not even have a slated release date for the Accused System. Deeter Dec. ¶ 11. Count III of the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). Plaintiffs lack standing to bring claims for unfair competition and false advertising under the Lanham Act.

## 2.      Dismissal Pursuant to Rule 12(b)(6).

Although none of Plaintiffs' Counts are specifically denominated as a Lanham Act claim, the allegations of Count III of the FAC bear the closest resemblance, since paragraph 11 of the FAC states that claims for unfair competition and false advertising are brought under the Lanham Act. To be entitled to relief under section 43(a), a plaintiff must ultimately prove that: (1) the defendant made a false or misleading statement of fact in commercial advertising or promotion about its or another's goods or services; (2) the statement deceived or was likely to deceive a substantial segment of the intended audience; (3) the deception was material; (4) the defendant caused the statement to enter interstate commerce; and (5) the statement resulted in injury to the plaintiff. *Buztronics, Inc. v. Theory3, Inc*., 2005 U.S. Dist. LEXIS 46967 (S.D. Ind. Indianapolis 2005) citing *Zenith Electronics Corp. v. Exzec, Inc*., 182 F.3d 1340, 1348 (Fed. Cir. 1999). At

12

the outset, there is no "commercial advertising or promotion," as required by *Buztronics*, alleged in the FAC. The statements complained of are social media statements. One additional element comes into play where a plaintiff alleges that another party's attempt to enforce its patent rights amounted to unfair competition, so as to avoid conflict between patent laws and the Lanham Act. "[B]efore a patentee may be held liable under § 43(a) for marketplace activity in support of its patent, and thus be deprived of the right to make statements about potential infringement of its patent, the marketplace activity must have been undertaken in bad faith." *Zenith*. at 1353. In order to recover damages, plaintiff must establish that the buying public was actually deceived. See *Skil Corp. v. Rockwell Int'l Corp.*, 375 F. Supp. 777 (N.D. Ill. 1974).

To the extent Plaintiffs rely on Indiana common law with respect to Count III, in *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001), the court stated that "Indiana courts have created a cause of action for unfair competition, defined as 'the attempt to create confusion concerning the source of the unfair competitor's goods.'" citing *Westward Coach Mfg. Co. v. Ford Motor Co*., 388 F.2d 627, 633 (7th Cir. 1968), cert. denied, 392 U.S. 927, 20 L.Ed.2d 1386, 88 S.Ct. 2286 (1968) (citations omitted). In *Hartzler v. Goshen Churn & Ladder Co*., 104 N.E. 34 (1914), the Indiana appellate court described unfair competition as "any conduct, the natural and probable tendency and effect of which is to deceive the public so as to pass off the goods or business of one person as and for that of another…" *Id*. at 37.

Regardless of whether Plaintiffs rely on the Lanham Act, or Indiana common law, Plaintiffs' claims for unfair competition and false advertising against WishBone and Deeter should be dismissed because Plaintiffs have not pleaded sufficient facts giving rise to unfair competition under either the Lanham Act, or state common law.  Additionally, the statements that Plaintiffs attempt to use in support of Count III cannot give rise to a claim because such

13

claims are barred by the litigation privilege. The material allegations concerning Count III are contained within paragraphs 104 through 109 of the FAC. Each of the material allegations of Count III specifically relates to either allegations contained in the S.D. Fla. Action, or to statements attributed to Deeter regarding the S.D. Fla. Action.

Paragraph 104 alleges: "Deeter and other WishBone employees have made false statements wrongly accusing Orthopediatrics of committing theft and improperly causing harm to an inventor on, at a minimum, Facebook and LinkedIn."

Response: The allegations in paragraph 104 relate to statements posted on LinkedIn or Facebook, after the Whitley Superior Court Action and/or the S.D. Fla. Action had each been filed. Aside from the fact that Deeter never stated that Plaintiffs committed theft (that implication was made by inventor, Tamer Isin in the same LinkedIn thread), as shown below, statements pertinent to the litigation are privileged and not actionable.

Paragraph 105 alleges: "In sum, Defendants have made false representations both on social media and to a court that Orthopediatrics' products were created, designed, and authorized by someone other than Plaintiffs."

Response: The allegations of paragraph 105 are not in addition to paragraphs 104, but are merely a summary of previous allegations. The allegations of paragraph 105 are, likewise, subject to the litigation privilege.

Paragraph 106 alleges: "As Deeter has admitted in his March 2, 2020 email to Mr. Korngold, his goal with litigation is to negatively affect Orthopediatrics' market share. Therefore, Defendants' actions have been deliberate, willful and malicious."

Response: The statement attributed to Deeter's March 2, 2020 email is not evidence of willfulness or malice in the context of unfair competition and false advertising. As the court in

14

*Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263 (7th Cir. 1992) noted, "Competition is ruthless, unprincipled, uncharitable, unforgiving--and a boon to society, Adam Smith reminds us, precisely because of these qualities that make it a bane to other producers." *Id.* at 1268. With respect to the allegation of false advertising, "To establish liability, a plaintiff must show that the challenged advertisement is literally false, or, if literally true or ambiguous, that it is 'misleading in context, as demonstrated by actual customer confusion.'" *BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1089 (7th Cir. 1994) citing *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992); *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939 (3rd Cir. 1993). Even if Deeter's motivation had been malicious, as alleged, such action would only go to the issue of damages if the statements covered under the litigation privilege were actionable. Plaintiffs have not made any allegation that would support a claim that Defendants' activities would give rise to liability under Count III.

Paragraph 107 alleges: "Defendants' statements on social media and to a court both are public and thus Defendants caused and directed their false or misleading statements to enter interstate commerce."

Response: Once again, the allegations are in reference to LinkedIn or Facebook posts <u>after</u> the Whitley Superior Court Action and/or the S.D. Fla. Action had been filed and are pertinent in reference to pending litigation. As such, the statements fall within the litigation privilege discussed below. In addition, the statements are not "commercial advertising or promotion," as required by *Buztronics, supra.*

In *Eckerle v. Katz & Korin, P.C.*, 81 N.E.3d 272 (Ind.Ct.App. 2017), the court stated that

Indiana law[3] has long recognized an absolute privilege that protects all relevant statements made in the course of a judicial proceeding, regardless of the truth or motive behind the statements. *Wilkins v. Hyde*, 142 Ind. 260, 261, 41 N.E. 536, 536 (1895); *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct.App. 1998). "The reason upon which the rule is founded is the necessity of preserving the due administration of justice," *Wilkins*, 142 Ind. at 261, 41 N.E. at 536, by providing actors in judicial proceedings with the freedom to participate without fear of future defamation claims. *Van Eaton*, 697 N.E.2d at 494 (citing *Briggs v. Clinton County Bank & Trust Co.*, 452 N.E.2d 989, 997 (Ind. Ct. App. 1983)). *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008). For immunity from liability to exist based on absolute privilege, the statement in question must be "relevant and pertinent to the litigation or bear some relation thereto." *Estate of Mayer*, 998 N.E.2d at 247(quoting *Stahl v. Kincade,* 135 Ind. App. 699, 707, 192 N.E.2d 493, 497 (1963)). The absolute privilege doctrine applies to defamation claims, torts related to defamation, and torts relying upon defamatory statements as proof of wrongdoing. *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 247 (Ind. Ct. App. 2013). "The prevailing rule is that . . . parties . . . are absolutely privileged to publish defamatory matter in the course of judicial proceedings, with the qualification that the statements must be pertinent and relevant to the case." *Briggs v. Clinton*

---

[3] Florida law is in accord. The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin. "Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So.2d 380, 383 (Fla. 2007). "It is the perceived necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications, that is the heart of the rule. The nature of the underlying dispute simply does not matter." *Id*. at 384.

"The law has long recognized that judges, counsel, parties, and witnesses should be absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings, regardless of how false or malicious the statements may be, as long as the statements bear some relation to or connection with the subject of inquiry." *Debrincat v. Fischer*, 217 So.3d 68, 69 (Fla. 2017).

Florida courts have applied the privilege not only to conduct undertaken while litigation is ongoing but also to conduct that is "necessarily preliminary" to judicial proceedings. (Citations omitted)(for the proposition that the absolute privilege "arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto." *AGM Investors, LLC v. Business Law Group, P.A.*, 219 So.3d 920 (Fla. Ct. App. 2nd 2017).

*County Bank & Trust Co.*, 452 N.E.2d 989, 997 (Ind. Ct. App 1983); see also *Van Eaton v. Fink*, 697 N.E.2d 490, 495 (citing *Chrysler Motors v. Graham*, 631 N.E.2d 7, 9 (Ind. Ct. App. 1994) ("Indiana law affords absolute privilege to statements made in the course of a judicial proceeding.") Whether statements made in judicial pleadings are pertinent and relevant is a question of law. Courts favor a liberal rule in favor of finding statements to be relevant and pertinent. Statements in a judicial proceeding will not enjoy an absolute privilege only if they are so palpably irrelevant to the subject matter of the case that no reasonable person could doubt their irrelevancy and impropriety. *Id*. at 247.

Other torts related to defamation, or relying upon defamatory statements as proof of wrongdoing, may also be barred by the absolute privilege. See *Hartman v. Keri*, 883 N.E.2d 774, 777 (Ind. 2008) (holding absolute privilege barred claims for libel, slander, and malicious interference with an employment contract). "The absolute privilege bars actions for defamation, negligent supervision and retention, tortious interference with a business relationship, and tortious interference with a contract." *Estate of Mayer*, at 249.

The litigation privilege also applies to allegations that are subsequently stricken from pleadings, provided that the statement otherwise satisfies the requirement that it be "palpably related" to the subject matter of the lawsuit. *Eckerle* at 283. This application is significant, here, since Plaintiffs' references to the "now-voluntarily dismissed S.D. Fla. Action" form the basis for a substantial portion of their claims, and Plaintiffs ignore the fact that the S.D. Fla. Action was refiled in Florida state court, now referred to herein as the "Florida Lawsuit." Whether the statements Plaintiffs allege were made regarding the Whitley Superior Court Action, the S.D. Fla. Action, or the Florida Lawsuit, the statements, if made, were with respect to pending

litigation and were privileged.[4]

Count III should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs have failed to allege that Defendants have made any defamatory statements that fall outside the litigation privilege.

### C.    Count IV of the FAC for Breach of Contract Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

#### 1.    Dismissal Pursuant to Rule 12(b)(1).

Plaintiffs have alleged in Count IV that Deeter breached the non-disparagement provision of his 2013 Severance Agreement with OrthoPediatrics by posting certain comments on his LinkedIn and Facebook social media pages. In order for this Court to exercise supplemental jurisdiction of the breach of contract claim, purely an Indiana state law claim, the Court must find that the claim is so related to the patent infringement claim – the federal claim - that it forms part of the "same case or controversy" under 28 U.S.C. § 1367(a). When a federal court has jurisdiction of a claim, supplemental jurisdiction allows the court to adjudicate all parts "of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). *Ammerman v. Sween*, 54 F.3d 423 (7th Cir. 1995). The statute confers supplemental jurisdiction to the limits Article III of the Constitution permits, authorizing federal courts to hear all claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Accordingly, judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of operative facts. *United Mine Workers of America v. Gibbs*, 383 U.S. 715,

---

[4] Since the S.D. Fla. Action was voluntarily dismissed by IMED the same day IMED filed the Florida Lawsuit, the pendency of litigation was uninterrupted at the time the alleged statements would have been made and, therefore, covered by the litigation privilege.

725, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966); *Myers v. County of Lake*, 30 F.3d 847, 850 (7th Cir.), cert. denied, 130 L. Ed. 2d 600, 115 S. Ct. 666 (1994).

It is not enough that the claims be tangentially related. *Hernandez v. Dart*, 635 F.Supp.2d 798, 814 (N.D. Ill. 2009) (internal citation omitted). The "facts linking state to federal claims must be 'operative,' meaning they must be 'relevant to the resolution of' the federal claims." U.S. *v. Clark*, 2010 U.S. Dist. LEXIS 9712, 2010 WL 476637, at *1 (N.D. Ill. 2010) (internal citation omitted); see also *General Auto Serv. Station v. The City of Chicago*, 2004 U.S. Dist. LEXIS 3800, 2004 WL 442636, at *12 (N.D. Ill. 2004) (state law claim that provided "factual background" for federal constitutional claim was not sufficiently related to give rise to supplemental jurisdiction). Just as importantly, in deciding whether the fact pattern presented in a litigation coalesces into a case or controversy, a court should make its determination largely upon whether the "claims are such that [a court] would ordinarily be expected to try them all in one judicial proceeding." *Gibbs,* 383 U.S. at 725.[5]

The references in the FAC to Deeter's breach of the severance agreement (covered in subsection 2, immediately below) have absolutely no relationship to the federal patent infringement claim. It is simply not possible to link the breach of contract allegations to the resolution of the federal claim such that they form a common nucleus of operative facts. (Related state-law claims must derive from a "common nucleus of operative fact" as do the federal-law claims.) *Gibbs*, 383 U.S. at 725.

Moreover, the WishBone product that Plaintiffs allege constitutes the "Accused System" in the FAC is not the IMED product; rather, the Accused System is a product owned by a

---

[5] Plaintiffs are certainly aware that the defense of the claims asserted against Deeter are likely to come at considerable expense and that, by including the broad array of state law supplemental claims, Deeter's insurance carrier will not provide a defense of the lawsuit when such claims are appended to a patent infringement claim.

WishBone-owned company called Response Ortho. Plaintiffs are trying to litigate their ownership claims versus IMED in the case before this Court. Deeter's social media posts are related to the *IMED v OP* product dispute in the Florida Lawsuit and do not relate at all to the product dispute raised here concerning the Orthodpediatrics and Response Ortho products.

### 2.      Dismissal Pursuant to Rule 12(b)(6).

Plaintiffs' claim for breach of Deeter's severance agreement should also be dismissed pursuant to Rule 12(b)(6). All of the statements Plaintiffs assert violate the non-disparagement provision are protected by the applicable litigation privilege. The basis for the application of the litigation privilege is discussed in greater detail in Section B, above, and the citations to authorities and associated arguments are incorporated herein by reference. Essentially, "The prevailing rule is that . . . parties . . . are absolutely privileged to publish defamatory matter in the course of judicial proceedings, with the qualification that the statements must be pertinent and relevant to the case." *Briggs v. Clinton County Bank & Trust Co*., 452 N.E.2d 989, 997 (Ind. Ct. App 1983).

The FAC makes reference to several statements Plaintiffs attribute to Deeter in support of the claim that Deeter breached the non-disparagement provision of the severance agreement, as follows:

Paragraph 51: "For example, on March 2, 2020, Deeter sent an email to Aaron Korngold stating, in relevant part, that he was attempting to "put considerable downward pressure on the KIDS public stock." KIDS refers to OP's trading symbol on NASDAQ."

Paragraph 52: "Deeter also wrote in his March 2, 2020 email to Mr. Korngold that Deeter and WishBone "haven't spent much time on this lawsuit [Whitley Superior Court Action], but now that we are well funded, we have hired new legal counsel to file numerous countersuits," which includes the now-voluntarily dismissed S.D. Fla. Action."

LinkedIn screenshots at Paragraph 54: "Tamer, in the U.S. we say, "what goes around, comes around". OrthoPediatrics has been bullying us for years. This type of behavior always has consequences. Best of luck."

Plaintiffs allege in Count IV, paragraph 114: "Deeter has breached the Severance Agreement by making disparaging false statements and comments about OP and OP's reputation to third parties, including but not limited to stating that Plaintiffs have stolen the intellectual property of others."

Each of the statements attributed to Deeter by Plaintiffs as constituting a breach of the severance agreement (regardless of whether Plaintiffs' attribution is accurate), was made in the course of judicial proceedings, was pertinent to the case, and therefore absolutely privileged.

The litigation privilege is also applicable to breach of contract actions. In *Rain v. Rolls-Royce Corp*., 626 F.3d 372, 378 (7th Cir. 2010), the court observed, "No Indiana court has addressed whether the absolute privilege precludes not only tort liability, but also contractual liability." The Seventh Circuit took it upon itself to anticipate what Indiana courts would do. The *Rain* court noted, "Courts in a number of other jurisdictions have concluded that the absolute litigation privilege is applicable to breach of contract actions, at least where immunity from liability is consistent with the purpose of the privilege. The application of the privilege here allows Rolls-Royce to pursue its claims against third parties without fear of future legal liability arising out of its efforts to protect its intellectual property rights. By contrast, the failure to apply the privilege would frustrate the underlying policy by discouraging Rolls-Royce from exercising its fundamental right to resort to the courts to protect its rights." *Id*

It is clear from the face of the FAC that the statements attributed to Deeter are in reference to litigation and are privileged. The *Rain v. Rolls-Royce* case makes it additionally

clear that the absolute privilege precludes, breach of contract claims, such as Count IV, as well.

Count IV should be dismissed pursuant to Rule 12(b)(6).

### D.   Count V of the FAC for Defamation *Per Se* Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

#### 1.   Dismissal Pursuant to Rule 12(b)(1).

Plaintiffs' claim for defamation *per se* should be dismissed because it does not share a common nucleus of operative facts with Plaintiffs' federal patent claim. In *Rogers v. Fort Wayne Police Dep't*, 2007 U.S. Dist. LEXIS 35946 (N.D. Ind. Ft. Wayne Div. May 14, 2007), the court noted that "What makes [plaintiff's] claim jurisdictionally problematic, however, is that he offers no argument or proof to establish even an inference that there is a "common nucleus of operative facts" between the defamation claim he brings [and the federal claims]. Under a Rule 12(b)(1) motion, the party asserting jurisdiction bears the burden of demonstrating subject matter jurisdiction by competent proof." The *Rogers* court cited a similar holding in *Muhammad v. Chicago Park Dist.*, No. 04 C 5183, No. 06 C 0308,  2007 U.S. Dist. LEXIS 23885, 2007 WL 1030431 (N.D. Ill. March 30, 2007), noting in *Muhammad* that the Plaintiff alleged claims under Title VII as well as a count for slander against the Defendants, but the district court dismissed the slander count because "[b]ased upon the limited information contained in the claims of Plaintiffs' verified amended complaint, it does not appear that the same central fact pattern applies to both the federal claims and the state claims." *Id*. at *7.

Count V is based solely on statements contained in social media accounts relating to pending litigation and, as such, should be barred by the litigation privilege. However, because many of the purported defamatory statements were not actually made by Deeter, but are merely attributed to him, the allegations of Count V are too generalized and non-specific (as well as misdirected) to form a basis for liability. The allegation that Deeter and other WishBone

employees have uttered defamatory statements without specifying with particularity what those statements are, when they occurred (only 2 of the 25 screenshot statements in paragraphs 56 – 65 of the FAC has a date/time stamp), or to what subject they are in reference, this Court is left with insufficiently pleaded facts upon which to base a decision on supplemental jurisdiction. The statements purported to be defamatory referenced in the FAC do not relate to the WishBone product in this matter, but the product which is the subject of the IMED claim in the Florida Lawsuit. If the statements do not fall within the litigation privilege, the allegations lack sufficient specificity to establish supplemental jurisdiction.

As stated above, it is not enough that the claims be tangentially related. *Hernandez v. Dart*, 635 F.Supp.2d 798, 814 (N.D. Ill. 2009) (internal citation omitted). The "facts linking state to federal claims must be 'operative,' meaning they must be 'relevant to the resolution of' the federal claims." *U.S. v. Clark*, 2010 U.S. Dist. LEXIS 9712, 2010 WL 476637, at *1 (N.D. Ill. 2010). Count V should be dismissed pursuant to Rule 12(b)(1).

## 2.     Dismissal Pursuant to Rule 12(b)(6).

Plaintiffs' claim for defamation *per se* should also be dismissed for failure to state a claim upon which relief can be granted. "A communication is defamatory *per se* if it imputes: (1) criminal conduct; (2) a loathsome disease; (3) misconduct in a person's trade, profession, office, or occupation; or (4) sexual misconduct." *Columbus Specialty Surgery Ctr. v. Southeastern Ind. Health Org.*, 22 N.E.3d 665 (Ind. 2014) citing *Newman v. Jewish Cmty. Ctr. Assn. of Indpls.*, 875 N.E.2d 729, 739 (Ind. Ct. App. 2007). "[A] plaintiff who sues for defamation must set out the alleged defamatory statement in the complaint." *Haegert v. McMullan,* 953 N.E.2d 1223, 1230 (Ind. Ct. App. 2011). The Indiana Supreme Court has held that

> even under notice pleading, a plaintiff must still set out the operative facts of the claim. Indeed, hornbook law stresses the necessity of including the alleged defamatory statement in the complaint. [citations omitted]. There is sound reason

for this policy, as the absence of a statement in the complaint works a detriment on both the court and the defendant. The court is handicapped without the statement since, without it, the court cannot actually determine if the statement is legally defamatory. [citation omitted]. The defendant is placed on an unfair footing since the absence of the statement denies her the opportunity to prepare appropriate defenses.... Permitting defamation actions to proceed without the inclusion of the alleged statement would sanction claims brought by individuals who allege nothing more than that someone must have said something defamatory about them....

*Trail v. Boys and Girls Clubs of Nw. Ind*., 845 N.E.2d 130, 136-38 (Ind. 2006).

"[F]or a statement to be actionable, it must be clear that it contains objectively verifiable fact regarding the Plaintiff. If the speaker is merely expressing his subjective view, interpretation, or theory, then the statement is not actionable." *Meyer v. Beta Tau House Corp.,* 31 N.E.3d 501, 515 (Ind. Ct. App. 2015) (citation omitted). "The determination of whether a communication is defamatory is a question of law for the court." *Ali v. Alliance Home Health Care, LLC*, 53 N.E.3d 420, 428 (Ind. Ct. App. 2016). It should be clear from the face of the FAC that none of the purported statements is defamatory. The Court is urged "to draw on its judicial experience and common sense." See *Ashcroft v. Iqbal*, 129 S. Ct. at 1950.

Count V of the FAC, Paragraph 117 alleges as follows:

"Deeter and other employees of WishBone have made false statements wrongly stating that Orthopediatrics has stolen the intellectual property of others, causing injury to an inventor."

Response: Paragraph 117 does not include the alleged defamatory statement; however, in paragraph 62 of the FAC, Plaintiffs present a screenshot from LinkedIn that Plaintiffs erroneously assert includes a "disparaging comment" by Deeter that "OP *stole* something which is demonstrably untrue." A clear reading of the screenshot shows Deeter made no such statement and made no statement that falls within the definition of defamation *per se*. The statement regarding something being stolen is by Tamer Isin, not Deeter. Plaintiffs have failed to include

the necessary defamatory statement attributable to Deeter in the FAC. See, *Trail v. Boys and Girls Clubs of Nw. Ind.*, *supra*.

In an effort to support their allegations, Plaintiffs again present a screenshot from LinkedIn that Plaintiffs erroneously assert includes a "disparaging comment" – which is actually an analogy - by Mary Wetzel, WishBone's President and COO. The LinkedIn screenshot at paragraph 63 of the FAC purportedly contains Ms. Wetzel's statement: "Wow. Crazy what they did to that poor inventor trying to make a living. It reminds me of Robert Kearns who invented intermittent wipers and unfortunately, the big car companies stole it. He finally won $millions in the end." Ms. Wetzel did not falsely state that Plaintiffs stole anything. Consequently, Plaintiffs failed to include the necessary defamatory statement attributable to a WishBone employee in the FAC. See, *Trail v. Boys and Girls Clubs of Nw. Ind.*, *supra*.

Moreover, immediately below, and part of the referenced screenshot in paragraph 63, is the image of a judicial gavel and the caption: "IMED Surgical Files Federal Lawsuit Against Orthex, Dror Paley, OrthoPediatrics, and Squadron Capital." Clearly, the LinkedIn statement by Mary Wetzel was a comment on the S.D. Fla. Action. Together, the statements of Deeter and Ms. Wetzel, even if they were actionable on their own, fall within the litigation privilege and are not actionable.

Paragraph 118 alleges: "Deeter's and other WishBone employees' false statements that Orthopediatrics has stolen from others and caused injury to an inventor have caused harm to Orthopediatrics' reputations such that they lower Orthopediatrics in the eyes of the community and/or deter third persons from associating with Orthopediatrics."

Response: Plaintiffs failed to include defamatory statements in the FAC, which even if such statements were defamatory – which they are not – are not actionable as defamation *per se*

because they fall within the litigation privilege.[6] Count V should be dismissed pursuant to Rule 12(b)(6).

    **E.**    **Count VI of the FAC for Tortious Interference with Contractual Relationships Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6).**

    **1.**    **Dismissal Pursuant to Rule 12(b)(1).**

If the allegations in Count VI of the FAC for tortious interference with contractual relations are based on something other than the allegations in the S.D. Fla. Action and/or the statements attributed to social media posts, which would fall under the applicable litigation privilege, then Count VI should be dismissed. The FAC fails to allege a sufficient factual basis of the claim for this Court to exercise supplemental jurisdiction. The arguments and authorities cited herein below regarding the sufficiency of allegations to support Count VI are adopted by Defendants as the grounds for dismissal. Count VI should be dismissed pursuant to Rule 12(b)(1).

    **2.**    **Dismissal Pursuant to Rule 12(b)(6).**

To state a claim for tortious interference with contract, a plaintiff must allege 1) the existence of a valid and enforceable contract, 2) the defendant's knowledge of the existence of the contract, 3) the defendant's intentional inducement of breach of the contract, 4) the absence of justification, and 5) damages resulting from the defendant's wrongful inducement of the breach. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994), *aff'd* 619 N.E.2d 597 (Ind. Ct. App. 1993); *Melton v. Ousley,* 925 N.E.2d 430, 440 (Ind. Ct. App. 2010).  Plaintiffs must in their factual allegations address not only how the defendant interfered with a contract, but *why* the defendant did so. See *Mourning v. Allison Transmission,* 72 N.E.3d 482, 488-89

---

[6] With respect to the FAC's allegations in paragraphs 64 and 65 regarding the Culpepper Report, see Declaration of Nick A. Deeter [Dkt. 25-1, ¶¶ 11-15], filed in support of Defendants' Memorandum of Law in Opposition to a Motion for Expedited Discovery [Dkt. 25].

(Ind. Ct. App. 2017). A plaintiff must state more than a mere assertion that the defendant's conduct was unjustified. *See HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989) (noting that "[t]o properly state a cause of action for intentional interference with contractual rights, a plaintiff must state more than a mere assertion that the defendant's conduct was unjustified"; rather "the plaintiff must set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified"). "To satisfy [the element of lack of justification], the breach must be malicious and exclusively directed to the injury and damage of another." *Winkler v. V. G. Reed & Sons, Inc.*, 619 N.E.2d 597, 600-01 (Ind. Ct. App. 1993) (citations omitted), *aff'd*, 638 N.E.2d 1228 (1994); *see also Flintridge Station Ass'n v. American Fletcher Mortgage Co.*, 761 F.2d 434, 441 (7th Cir. 1985) (defining unjustified as "disinterested malevolence"; "a malicious [conduct] unmixed with any other and exclusively directed to injury and damage of another"); *Economation, Inc. v. Automated Conveyor Sys., Inc.*, 694 F. Supp. 553, 562 (S.D. Ind. 1988). Moreover, the existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability. *Winkler*, 619 N.E.2d at 600-01.

Count VI alleges that Defendants tortiously interfered with Orthopediatrics' existing contracts with its licensee customers, yet nowhere in the FAC does Orthopediatrics identify what contracts it allegedly has, with whom, which contracts were interfered with, how any statements of Defendants would have interfered. Instead, Orthopediatrics relies on the conclusory allegations that Orthopediatrics "has valid and existing contracts with its licensee customers" [Dkt. 33, ¶ 121] and that "[u]pon information and belief, Defendants knew of these contractual relations as Deeter was a former executive of OP." [Dkt. 33, ¶ 122]. Moreover, rather than plead specific knowledge of contractual interference, Plaintiffs, again engage in conclusory pleading

27

by alleging "[u]pon information and belief, Defendants have contacted Orthopediatrics' licensee customers and made false, misleading, and/or deceptive statements to Orthopediatrics' licensee customers…"   As stated in *DBS Constr., Inc. v. New Equip. Leasing, Inc*., 2011 U.S. Dist. LEXIS 32681 (N.D. Ind., Hammond Div. March 28, 2011), a plaintiff must prove that defendant "had knowledge of the contract at the time of the allegedly tortious conduct. *Tenta v. Guraly*, 221 N.E.2d 577, 580 (Ind. Ct. App. 1966). Importantly, this must be actual knowledge — objective standards like implied knowledge or constructive knowledge are insufficient. *Id*. See also *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp*., 759 N.E.2d 239, 251-252 (Ind. Ct.App. 2001) (summary judgment granted to Defendant for tortious interference with contract in part because Defendant had no knowledge of the contract at issue)." *DBS Constr., Inc.* [*11].

Orthopediatrics fails to allege that any of its licensees actually breached its contract with Orthopediatrics. Orthopediatrics only alleges that Defendants contacted their unidentified licensee customers, not that there was a resulting breach causing damages to Orthopediatrics. The conclusory allegations of Count VI do not meet the pleading standards of *Twombly* or *Iqbal*, *supra*. (allege enough facts to state a claim to relief that is plausible on its face or assert mere conclusory allegations). Count VI should be dismissed pursuant to Rule 12(b)(6).

**F.     Count VII of the FAC for Tortious Interference with Prospective Contractual Relationships Should be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(1) and (6).**

**1.     Dismissal Pursuant to Rule 12(b)(1).**

If the allegations in Count VII of the FAC for tortious interference with prospective contractual relations are based on something other than the allegations in the S.D. Fla. Action and/or the statements attributed to LinkedIn posts, which would fall under the applicable litigation privilege, then Count VII should be dismissed on the grounds that the FAC fails to allege a sufficient factual basis of the claim for this Court to exercise supplemental jurisdiction.

The arguments and authorities cited herein below regarding the sufficiency of allegations to support Count VI are adopted by Defendants as the grounds for dismissal. Count VII should be dismissed pursuant to Rule 12(b)(1).

### 2.    Dismissal Pursuant to Rule 12(b)(6).

The elements of tortious interference with a prospective business relationship are: "(1) the existence of a valid relationship; (2) the defendant's knowledge of the existence of the relationship; (3) the defendant's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship." *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind. 2005). Additionally, the Indiana Supreme Court has held that "this tort requires some independent illegal action." *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003), cert. denied, 541 U.S. 902, 124 S. Ct. 1602 (2004).

Orthopediatrics' allegations in Count VII closely mirror those of Count VI, even to the extent of alleging the existence of contracts and alleging that the purpose of Defendants' conduct was to induce the breach of Orthopediatrics' contracts with their licensees, which elements are not a part of a tortious interference with prospective contractual relationship claim.

Orthopediatrics baldly characterizes Defendants' actions as "illegal" in paragraph 131 of the FAC, but does not cite to any specific conduct as illegal, or to the violation of any statute that would constitute illegal conduct in order to satisfy the pleading requirements of a tortious interference with a prospective business relationship claim.

Each of the claims asserted in Counts VI and VII contains the element "the absence of justification." While Defendants deny engaging in the wrongful conduct alleged in Counts V and VI, even if such conduct were to be proven true, Defendants are entitled to assert the defense of justification. The Indiana Supreme Court analyzed the element of justification in *Harvest Life*

*Ins. Co. v. Getche,* 701 N.E.2d 871, 877 (Ind. Ct. App. 1998), reh'g denied, trans. denied, and

held:

> On the issue of justification when it concerns competitors in business we have turned to the Restatement (Second) of Torts § 768 (1977) for assistance. This section provides as follows:
> § 768 Competition as Proper or Improper Interference
> (1)    One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
> (a) the relation concerns a matter involved in the competition between the actor and the other and
> (b) the actor does not employ wrongful means and
> (c) his action does not create or continue an unlawful restraint on trade and
> (d) his purpose is at least in part to advance his interest in competing with the other. [ ]
> The commentary to Restatement (Second) § 768 (1977) explains as follows:
> One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in this Section entitles one not only to seek to divert business from his competitors generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly by attractive offers of his own goods or services. The only limitations upon this are those stated in Clauses (a) to (d).
> *Harvest Life Ins. Co.* at 877.

Orthopediatrics failed to plead any facts showing that Defendants' actions resulted in any

actual interference with Orthopediatrics' business relationships. Similarly, Orthopediatrics failed

to plead any facts showing the illegality of Defendants' actions, or that Defendants' actions were

without justification. Orthopediatrics and WishBone are business competitors and the actions of

Defendants as alleged by Orthopediatrics demonstrates business competition, not tortious

conduct, unless the statements referenced above constitute defamation *per se* which that is barred

by the litigation privilege. Count VII should be dismissed pursuant to Rule 12(b)(6).

## IV.    CONCLUSION

For each of the foregoing reasons, Counts I through VII of the FAC should be dismissed.

Dated: January 20, 2021

Respectfully submitted,

*/s/ Garrick T. Lankford*
Garrick T. Lankford
glankford@bhlawyers.net
Michael D. Marston
mmarston@bhlawyers.net
**BOTKIN & HALL, LLP**
1003 N. Hickory Road
South Bend, IN 46615
Phone: (574) 234-3900
Facsimile: (574) 236-2839

And

Michael J. King
mking@wintersking.com
**WINTERS & KING, INC.**
2448 East 81st Street
Suite 5900
Tulsa, OK 74137
Phone: (918) 494-6868
Facsimile: (918) 491-6297
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system on January 20, 2021, which will send notification of such filing to all parties of record.


<u>/s/Garrick T. Lankford</u>
Garrick T. Lankford