UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ORTHOPEDIATRICS CORP., et al., | |
| Plaintiffs, | |
| v. | Case No. 3:20-CV-929 JD |
| WISHBONE MEDICAL, INC., et al., | |
| Defendants. | |

## OPINION AND ORDER

The Plaintiffs in this case all have an interest in a patented computer program that allows medical professionals to more easily determine the correct way to position bones for optimal healing after orthopedic procedures. The Plaintiffs allege that the Defendants not only copied the method the program uses but are now in the process of infringing on the patent that protects the program. They also allege that the Defendants are simultaneously engaged in a smear campaign against them in an effort to steal market share in the pediatric orthopedic industry. The Plaintiffs filed this seven-count lawsuit to address the harms they allege the Defendants have caused. The Defendants responded with a motion to dismiss all seven counts. Both the Plaintiffs and the Defendants have also moved for leave to file surreplies. For the following reasons, the Court grants the Defendants' motion to dismiss in part and denies the parties' motions to file surreplies.

## I.     Factual Background

Orthopedic professionals sometimes use devices referred to as external fixators to treat patients suffering from broken bones or other bone abnormalities. The external fixators at play here are cylindrical devices made up of two rings with struts running between them. The device fits around an individual's limb and has certain struts that run into the limb and attach to the bone

to ensure the bone is positioned to heal properly. Prior to the advent of the patented computer technology at issue in this case, orthopedic surgeons had to rely on their own estimations and experience to determine exactly how to position the external fixator and accompanying struts on a limb. (DE 33 at 10–11.) The new technology, patented under patent number 10,258,377 ("'377 Patent"), allows orthopedic professionals to look at an x-ray or other photographic image of a patient's bone and the fixator rings on a computer screen, use a mouse to inscribe lines and points on the images, and then generate calculations showing the optimum positioning for the bones using the external fixator. (*Id.* at 11.)

Plaintiff Orthex LLC, a wholly owned subsidiary of Plaintiff OrthoPediatrics Corp., is the assignee of the '377 Patent (*Id.* at 3; DE 40-1 at 4–5; DE 40-2 at 2) and Plaintiff Vilex, a medical device company, is an exclusive licensee (DE 33 at 3). OrthoPediatrics is a company focused on creating and bringing to market orthopedic products that are specifically designed for the pediatric market. (*Id.* at 6–7.) The three plaintiffs brought this suit against the Defendants Wishbone Medical, Inc., an OrthoPediatrics competitor, and Nick Deeter, an OrthoPediatrics founder who is now chairman and CEO of Wishbone, in part because they allege that Wishbone is already or is imminently going to be infringing on the '377 Patent through sale, use, and promotion of Wishbone's Smart Correction External Fixation System ("Accused System"), which allegedly copies the process described in the '377 Patent. Those allegations underly the Plaintiffs' claim for direct or induced patent infringement as well as their claim for a declaratory judgment of infringement in their amended complaint. (*Id.* at 12–13, 26–39.) The Defendants deny any infringement or imminent infringement and have submitted affidavits from Mr. Deeter to that effect. (DE 38 at 13–15; DE 38-3; DE 43-1.)

The patent infringement disputes are made somewhat more complicated by a conflict between the Plaintiffs and Defendants about the true ownership of the '377 Patent. The Plaintiffs assert, and the Court construes as true at this stage of the litigation, that the '377 Patent inventors are Dr. Abraham Lavi and Dr. Dror Paley, both of whom validly signed and executed an assignment of the patent to Orthex that is recognized by the U.S. Patent and Trademark Office. (DE 33 at 2, 9; DE 40-1; DE 40-2.) The Defendants allege a more convoluted history to the '377 Patent. They allege that a man named Tamer Isin, who is a principal with the company IMED Surgical, LLC, which plays no part in this case, originally had the idea for a point-and-click system and that Dr. Paley had previously entered into a consulting agreement with IMED to work on developing, refining, and commercially facilitating Mr. Isin's idea. (DE 38 at 7; DE 38-1.) According to the Defendants, part of that agreement required Dr. Paley to disclose and assign to IMED any patent he received related to his work to develop the idea. The Defendants claim that Dr. Paley ultimately disavowed that agreement after receiving the '377 Patent and instead assigned the patent to Orthex. (DE 38 at 7–8.) There is ongoing litigation in Florida state court in which IMED is suing Orthex, Dr. Paley, and OrthoPediatrics over the allegedly breached consulting agreement. (DE 33 at 8–9; DE 38 at 8; DE 38-2.)

While that litigation has been proceeding, the Plaintiffs allege Mr. Deeter, who entered into a severance agreement with a non-disparagement clause when he left OrthoPediatrics, and other Wishbone employees have engaged in a smear campaign to hurt OrthoPediatrics's standing in the pediatric orthopedics market. (DE 33-3 at 4.) Much of the smear campaign that the Plaintiffs allege is in the form of social media posts on Facebook and LinkedIn. The posts include sharing of articles related to the pediatric orthopedic space as well as articles and reports

on the ongoing Florida state court case and another Indiana state court case OrthoPediatrics brought against Wishbone and a former employee.

For example, Mr. Deeter shared an article on January 4, 2019 that discussed the Indiana state court litigation between OrthoPediatrics and Wishbone. Mary Wetzel, the COO, Secretary, and Treasurer of Wishbone, commented on Mr. Deeter's post suggesting that OrthoPediatrics was following former employees in an effort to ruin their lives. (*Id.* at 15–16.) Mr. Deeter then followed with a comment of his own stating "[t]he only way [OrthoPediatrics] can compete is to constantly harass us with lawsuits. It is sad." (*Id.* at 16, 18.) In another instance, Mr. Deeter again commented about OrthoPediatrics on an undated post Mr. Isin had made on LinkedIn, suggesting that OrthoPediatrics had been bullying Wishbone for years and that the company was engaged in "evil behavior." (*Id.* at 22.) And finally, Mr. Deeter, in another undated LinkedIn post, wrote comments that were supportive of Mr. Isin's claim that OrthoPediatrics had stolen the '377 Patent from Mr. Isin and suggested that OrthoPediatrics' actions in doing so was "just the tip of the iceberg." (*Id.* at 22–24.) This social media commentary in part underlies the Plaintiffs' five additional claims in the complaint for unfair competition and false advertising under the Lanham Act, breach of contract against Mr. Deeter, defamation *per se* against both Defendants, and tortious interference with existing and future contractual relationships against both Defendants. (*Id.* at 39–43.) The Plaintiffs have also generally alleged that Wishbone and Mr. Deeter have been reaching out to current and prospective OrthoPediatrics customers to spread misinformation. (*Id.* at 20–21, 40.)

The Defendants eventually moved the Court to dismiss each count in the complaint, raising a variety of jurisdictional and claim construction arguments. The Plaintiffs opposed dismissal and later sought leave of the Court to file a surreply to highlight what they claimed was

newly discovered evidence of infringing activity by Wishbone. (DE 53.) The Defendants

subsequently responded with a motion to file a surreply of their own. (DE 59; DE 59-1.) With

that, the case became ripe for the Court's consideration.

## II.      Standard of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of claims over which the

Court lacks subject matter jurisdiction. If a jurisdictional challenge under 12(b)(1) only contests

the sufficiency of the plaintiff's allegations regarding subject matter jurisdiction, the Court must

accept as true all well-pleaded factual allegations in the complaint and draw all reasonable

inferences in favor of the plaintiff. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *Long v.

Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). If, however, the jurisdictional

challenge denies or contests the truth of the plaintiff's jurisdictional allegations, the Court may

look beyond the pleadings and view whatever evidence has been submitted on the issue to

determine whether subject matter jurisdiction exists. *Apex Dig., Inc. v. Sears, Roebuck & Co.*,

572 F.3d 440, 443–44 (7th Cir. 2009). The burden of establishing proper federal subject matter

jurisdiction rests on the parties asserting it, which for purposes of this motion are the Plaintiffs.

*Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

In considering a potential dismissal under Rule 12(b)(6), the Court construes the

complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and

draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d

1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must

contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its

face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative

level, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). A court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *Id.* at 617.

## III.   Discussion

The Defendants in this case have raised concerns about each of the seven counts listed in the Plaintiffs' complaint. Before proceeding to the arguments on each count, however, the Court first resolves the parties' requests for leave to file surreplies. (DE 53; DE 59.)

A surreply is generally disfavored, but courts have discretion to allow one when it is necessary to address new arguments or evidence raised in a reply brief or when it responds to new developments in the law. *Saunders v. Select Portfolio Servicing, Inc.*, No. 3:18-cv-572, RLM-MGG, 2019 WL 979609, at *1 (N.D. Ind. Feb. 27, 2019); *Merril Lynch Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, No. 2-09-CV-158, 2009 WL 3762974, at *1 (N.D. Ind. Nov. 9, 2009). The Plaintiffs' surreply and their reply to their motion for leave to file a surreply were premised on pictures taken from social media posts that showed a doctor using an external fixator and what appeared to be a launch party for the Accused System's marketing in the U.S. (DE 53; DE 58.) The Plaintiffs argued that more briefing was required to explore these allegedly new developments in Wishbone's infringing of the '377 Patent. (DE 53-1 at 2–7; DE 58 at 1–5.) The Plaintiffs' new evidence and arguments were not properly raised in a surreply, however, as they neither responded to new arguments and evidence raised in the Defendants' reply nor to new

developments in the law. *See Saunders*, 2019 WL 979609 at *1. The Court, in its discretion, thus denies the Plaintiffs leave to file. Further, because the Defendants' surreply is premised only on responding to the Plaintiffs' surreply briefing (DE 59), the Court similarly denies the Defendants leave to file and moves on to consider the merits of the Defendants' motion to dismiss.

### A.    Count 1 – Infringement of the '377 Patent

The Defendants argued that the Plaintiffs' first count, which alleges that infringement of the '377 Patent has already occurred (DE 33 at 26), should be dismissed for jurisdictional reasons because the Plaintiffs lack standing. (DE 38 at 11–16.) The Defendants presented a two-pronged argument on standing. First, they argued that because there is an existing dispute in the Florida state court about whether Dr. Paley breached his consulting agreement by assigning the '377 Patent to Orthex, this Court cannot find that the Plaintiffs, through Orthex, have statutory standing to assert a claim for infringement of the '377 Patent. Second, the Defendants argued that the Plaintiffs have failed to prove an injury-in-fact and thus have not established constitutional standing either. (DE 38 at 13–16; DE 38-3 at 3.)

A party in a patent infringement case must meet both statutory and constitutional standing requirements to proceed. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338 (Fed. Cir. 2007). Statutory standing specifically asks whether a party can obtain relief under the patent laws, which means that, despite its name, it does not actually implicate standing or subject matter jurisdiction at all. *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020) (citing *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1235–36 (Fed. Cir. 2019) (concluding that "whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction"); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)). Statutory standing instead addresses

whether there is a valid cause of action under which to proceed and thus requires a court to conduct its analysis with the same latitude afforded to the plaintiffs as in an analysis for dismissal under Rule 12(b)(6). *Lone Star*, 925 F.3d at 1235 (citing *Lexmark*, 572 U.S. at 128 n.4).

Applying that standard, the Court finds the Plaintiffs have statutory standing at this stage in the proceedings. For an entity to sue for patent infringement, it must be recognized as a patentee. 35 U.S.C. § 281. A valid assignee of a patent counts as a patentee under the statute and has statutory standing to sue. 35 U.S.C. § 100(d); *Lone Star*, 925 F.3d at 1229. While there is an ongoing dispute about Dr. Paley's assignment to Orthex, the Plaintiffs' factual allegations before the Court at this time clearly indicate that there was a valid assignment to Orthex of all rights, title, and interest in the '377 Patent through the recording of the assignment with the USPTO. (DE 39 at 13–16; DE 40-1; DE 40-2.) The Court, applying the Rule 12(b)(6) standard, construes those factual allegations as true and further notes that the Plaintiffs have bolstered their allegations by producing the filed assigning document. (DE 40-1; DE 40-2.) That filed document creates a presumption that Orthex is the owner of the '377 Patent. *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, 458 F. App'x 910, 912 (Fed. Cir. 2012) (citing *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1327–28 (Fed. Cir. 2010). The Court thus concludes at this stage that the Plaintiffs, through the assignment of the '377 Patent to Orthex, have statutory standing to bring the infringement claim.

The Court next moves to consider constitutional standing. To establish constitutional standing, a plaintiff must show: 1) that it has suffered an injury-in-fact; 2) that the injury is fairly traceable to the defendants' alleged conduct; and 3) that a favorable judicial decision would likely redress the injury. *Lone Star*, 925 F.3d at 1234 (citing *Lujan v. Defs. of Wildlife*, 504 U.S.

555, 560–61 (1992)). A motion to dismiss based on lack of constitutional standing can be brought as a facial or factual challenge under Rule 12(b)(1) because it represents a jurisdictional defect. *Lone Star*, 925 F.3d at 1235.

The Defendants characterized their challenge for lack of constitutional standing as a factual challenge and premised it on an alleged lack of any injury-in-fact. (DE 38 at 13–14.) They did so in two ways. First, they disputed whether Wishbone could infringe on the '377 Patent because the patent claims require an "orthopedic professional" to make use of the underlying system by using "at least two medical images of a patient." (DE 33 at 27.) The Defendants read that language as requiring any potential infringer to be a medical facility in the process of treating a patient, which it is not. (DE 38 at 14.) Second, the Defendants supplied affidavits from Mr. Deeter in which he stated that Wishbone "has not sold, leased, rented, loaned, consigned, or otherwise profited from the use of the Accused System in the United States" and that there is no release date for the Accused System to be sold within the United States. (DE 43-1 at 3.) The Plaintiffs dispute both of the Defendants' points, first arguing that the Defendants offer a far too narrow reading of who can infringe the patent and second arguing that Mr. Deeter's affidavits leave unaddressed the Plaintiffs' allegations that Wishbone has infringed by use of the Accused System in testing, demonstrations, marketing, advertising, product development, and training. (DE 39 at 17.) There is thus a clear factual dispute between the parties as to whether there has been any infringement. The factual dispute underlying what the Defendants frame as a factual Rule 12(b)(1) challenge would generally prompt the Court to look beyond the pleadings and demand that the Plaintiffs submit evidence to prove by a preponderance of the evidence that there has been an injury-in-fact that would give them

constitutional standing to pursue this claim. *See Bazile v. Fin Sys. of Green Bay, Inc.*, 983 F.3d 274, 277 (7th Cir. 2020); *Apex Digital*, 572 F.3d at 443–44.

But the factual dispute about injury-in-fact here presents a distinct problem because it is inherently intertwined with the merits of the Plaintiffs' patent infringement claim and would thus force the Court to resolve the merits just to determine whether there was an injury-in-fact. Prior courts confronted with similar situations of intertwined standing and merits decisions at the motion to dismiss stage have held that dismissal for lack of standing is not appropriate. *See, e.g.*, *Markle v. Drummond Advisors, LLC*, No. 19-cv-2789, 2020 WL 777272, at \*4 (N.D. Ill. Feb. 18, 2020) ("Because a factual dispute exists as to not only standing but the merits of the Plaintiff's case, this Court provisionally finds that Plaintiff possesses standing and reserves the ultimate determination of standing until later in the proceedings when this Court may benefit from a fuller factual record") (citing *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986); *Gruen Mktg. Corp. v. Benrus Watch Co.*, 955 F. Supp. 979, 982 (N.D. Ill. 1997)); *see also Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019) (citing *Bell v. Hood*, 327 U.S. 678 (1946)). Taking the same course, the Court finds there is a valid factual dispute over infringement at this time and provisionally finds that the Plaintiffs have constitutional standing to bring their infringement claim given their factual allegations and the plausible inferences of infringement they support. The Court reaches this decision with the understanding that an ultimate determination of constitutional standing can be made when the parties and Court have the benefit of a more complete factual record. Given the finding of both statutory and constitutional standing at this stage, the Court finds no basis to dismiss the Plaintiffs' patent infringement claim.

**B.      Count 2 – Declaratory Judgment of Infringement of the '377 Patent**

The Court next moves to consider the Defendants' argument that the Plaintiffs' declaratory judgment claim should also be dismissed for lack of standing. The Defendants made a similar argument in this claim as they did in the prior claim, asserting that the Plaintiffs had failed to establish an injury that would justify declaratory judgment of patent infringement. (DE 43 at 7–8.) The Plaintiffs responded by pointing to their allegations in the complaint that Wishbone has already engaged in patent infringement and, even if it has not, has taken steps that show that infringement is imminent. (DE 39 at 17–20.) Both of those assertions are sufficient at this stage to avoid dismissal, according to the Plaintiffs. (*Id.*) The Court agrees, finding that the Defendants' argument for dismissal based on lack of standing again inappropriately asks the Court to decide the merits of the claim at this early stage without the Plaintiffs having the benefit of discovery and a more complete record.

The Declaratory Judgment Act allows a federal court, "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Supreme Court has stated the test for whether an "actual controversy" exists is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). With respect to declaratory judgments based on patent infringement, while it is more common for potential infringers of a patent to seek declaratory judgment of noninfringement or invalidity of the patent, it is also possible for patentees to seek declaratory judgment against parties who will allegedly infringe on the patentee's patent in the future. *See Lang v. Pac. Marine & Supply Co.*, 895 F.2d 761, 763 (Fed. Cir. 1990). The burden is on the party claiming declaratory judgment jurisdiction to

establish that an actual case or controversy existed at the time the claim for declaratory relief was filed. *Arris Grp., Inc. v. Brit. Telecommunications PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011).

The Plaintiffs, at this early stage, have sufficiently alleged that there is an actual case or controversy of sufficient immediacy that could warrant a declaratory judgment. First, the Plaintiffs, as discussed in more detail above, successfully alleged that Wishbone has already been infringing on the '377 Patent. Those allegations, which the Court accepts as true here, qualify as support for finding that there is an actual case or controversy for which declaratory relief may be warranted. *See Cardinal Chem Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 96 (1993) ("If . . . a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction of a complaint . . . under the [Declaratory Judgment] Act.") (emphasis in original).

Second, the Plaintiffs have sufficiently alleged an alternative basis for declaratory judgment, namely that Wishbone's infringement is at least imminent given the company has taken steps to develop the Accused System and prime it for entry into the United States. The Plaintiffs' allegations related to imminent infringement rest on the fact that Wishbone recently applied to the FDA for permission to market the Accused System in the United States, announced that the FDA had approved Wishbone's request, has advertised the Accused System as a Wishbone product on its website, has created instructions pertaining to the use of the Accused System, and has decided not to respond to a cease-and-desist letter the Plaintiffs sent at the time they filed this lawsuit. (DE 33 at 38; DE 39 at 19.) The Defendants countered the Plaintiffs' evidence with affidavits from Mr. Deeter stating that there is no set date for the Accused System's entry into the United States market, arguments that the Wishbone website makes clear the Accused System is currently only offered outside the United States, and

assertions that the cease-and-desist letter was not worth responding to because it came on the same day as the complaint that began this case. (DE 43 at 7–8.)

The Defendants' arguments highlight factual disagreements with the Plaintiffs' claim, but those factual disagreements do not force the Court to fully decide the claim on the merits at this early stage as the Defendants seemingly request with their Rule 12(b)(1) challenge. *See Craftwood II*, 920 F.3d at 481; *Markle*, 2020 WL 777272, at *4. Instead, the Court must simply assure itself that the Plaintiffs have alleged facts that show there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of a declaratory judgment. *Arris*, 639 F.3d at 1373. The Court finds the Plaintiffs have, through their allegations about Wishbone's FDA approval to market the Accused System in the U.S. (DE 33-5) and Wishbone's existing infrastructure of instructional and promotional materials related to the Accused System, sufficiently alleged such an imminent case or controversy. *See Wyeth & Cordis Corp. v. Abbott Labs*, No. 08-cv-230, 2008 WL 2036805, at *5 (D.N.J. May 8, 2008) (finding FDA approval was a concrete step to consider). The Court thus finds no basis to dismiss the Plaintiffs' claim at this time.

### C.    Litigation Privilege Applicability in Counts III–VII

Before proceeding to the rest of the challenged claims, the Court first addresses the Defendants' recurring argument that each of the remaining claims should be dismissed to the extent they rely on social media or other statements that touch on ongoing litigation because the statements are protected through application of the absolute litigation privilege recognized in Indiana and Florida courts. (DE 43 at 11–12.) The Court finds that argument lacking because it asks the Court to extend the litigation privilege to content over which the state courts have not recognized it should apply.

"Indiana law affords absolute privilege to statements made in the course of a judicial proceeding." *Van Eaton v. Fink*, 697 N.E.2d 490, 494 (Ind. Ct. App. 1998). The privilege applies to statements by judges, attorneys, parties, and witnesses, but importantly does not apply "when the statements are not relevant and pertinent to the litigation or do not bear some relation thereto." *Id.* Further, the privilege is based on the idea that "public interest in the freedom of expression by participants in judicial proceedings, uninhibited by the risk of resultant suits for defamation, is so vital and necessary to the integrity of our judicial system that it must be made paramount to the right of the individual to a legal remedy when he has been wronged." *Id.* (quoting *Briggs v. Clinton County Bank & Trust, Co.*, 452 N.E.2d 989, 997 (Ind. Ct. App. 1983)). Florida courts have taken a similar approach, recognizing that the litigation privilege exempts litigation participants from liability for conduct "in the course of judicial proceedings so long as the conduct has some relation to or connection with the subject inquiry." *AGM Invs., LLC v. Bus. L. Grp., P.A.*, 219 So.3d 920, 924 (Fla Dist. Ct. App. 2017) (internal quotations omitted). Like in Indiana courts, the privilege applies both to conduct undertaken while the litigation is ongoing as well as to conduct before and after the litigation so long as the conduct preceding and subsequent to the litigation was undertaken for purposes of the litigation and not separately from it. *AGM*, 219 So.3d at 924; *Van Eaton*, 697 N.E.2d at 494.

The communications underlying the remaining counts do not fit within the scope of that privilege. The communications are primarily social media posts from Mr. Deeter and others associated with Wishbone that at most touch on litigation by sharing articles about the state cases and by offering their own, often negative, statements as to what the litigation says about OrthoPediatrics as a company. (DE 33 at 14–25.) The only other communications alleged in the complaint are an email Mr. Deeter sent in which he said his goal with litigation was to put

14

pressure on OrthoPediatrics's stock price and very general allegations from the Plaintiffs that Wishbone and Mr. Deeter have contacted current and potential OrthoPediatrics customers to spread misinformation. (*Id.* at 20, 42–43.) To the extent these posts, comments, and other communications at issue touch on ongoing litigation, they certainly do not do so as part of the litigation or as part of an effort to further any litigation. The Defendants have not presented, and the Court has not found, any case that has extended the litigation privilege to statements like those at issue here, which at best have a barely tangential connection to the actual proceedings of the ongoing litigation. Additionally, there is no evidence that protecting these social media posts and other communications, even those that are arguably commenting on the ongoing litigation, would serve the recognized purpose of the privilege to protect free expression that is integral to the judicial system's functioning. *See Van Eaton*, 697 N.E.2d at 494. The Court thus finds that dismissal of any of the remaining counts by recognizing a litigation privilege over the underlying statements offered as factual support for those counts is not warranted. With that understanding, the Court returns to the parties' arguments about the count-specific arguments within the motion to dismiss.

### D.     Count III – Unfair Competition and False Advertising

The Plaintiffs did not originally make clear what authority they were bringing their third count under, but later clarified in their response to the Defendants' motion to dismiss that they intended it to be a claim under the Lanham Act. (DE 33 at 3; DE 39 at 27 n.9.) The Lanham Act creates two distinct bases of liability, false association and false advertising. 15 U.S.C. §1125(a)(1)(B); *Lexmark*, 572 U.S. at 122. The Plaintiffs only alleged false advertising in their complaint. (DE 39 at 24–27.) The Defendants have argued that the Plaintiffs' Lanham Act claim

should be dismissed both because of jurisdictional problems and because it is a claim upon which relief cannot be granted.

### 1.   Rule 12(b)(1)

The Defendants' jurisdictional challenge to the Plaintiffs' third count changed somewhat over the course of the briefing on the motion to dismiss. Originally, the Defendants argued that the Plaintiffs did not have standing to bring the claim because they could not properly show that any of them were rightful owners of the '377 Patent. (DE 38 at 16.) But then, in their reply, the Defendants appeared to abandon that argument and instead shift to arguing that the Plaintiffs did not have statutory standing. (DE 43 at 13–14.) The Supreme Court has made clear that "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiffs." *Lexmark*, 572 U.S. at 133. Because the sufficiency of the Plaintiffs' Lanham Act claim does not hinge on ownership of the '377 Patent, the Court gives no weight to the Defendants' initial argument and moves to consider whether there is sufficient statutory standing to proceed. As already discussed, statutory standing does not implicate jurisdictional concerns but instead looks to concerns about the sufficiency of the claims under a Rule 12(b)(6) analysis. *See Schwendimann*, 959 F.3d at 1071. For that reason, the Court moves directly to consider the Defendants' 12(b)(6) arguments on the Lanham Act claim with an eye toward deciding whether the allegations the Plaintiffs have raised are sufficient to show statutory standing and a claim upon which relief can be granted.

### 2.   Rule 12(b)(6)

The Defendants' challenge to the sufficiency of the Lanham Act claim primarily asserts that the Plaintiffs allegations are too sparse to show that they qualify for relief under the Act. To prevail on a false advertising claim under the Lanham Act, a plaintiff must establish that: 1) the defendant made a materially false statement of fact in a commercial advertisement; 2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and 3) the plaintiff has been or is likely to be injured as a result of the false statement. *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)). The Seventh Circuit has recognized two types of statements that qualify under the Act, literally false statements and statements that are literally true but misleading. *Id.* at 382. Literally false statements, which the Plaintiffs allege are the subject of their claim (DE 33 at 39), "will necessarily deceive consumers, so extrinsic evidence of actual consumer confusion is not required." *Id.* But "[w]hile plaintiffs need not prove that false statements actually deceived anyone or were likely to do so at the dismissal stage, they are not excused from showing that false statements would materially affect a consumer's decisions to buy a product." *Diamond Sawblades Manufacturers' Coal. v. Diamond Tools Tech., LLC*, 504 F. Supp. 3d 927, 944–45 (S.D. Ind. 2020).

The Defendants argued in support of dismissal that the statements the Plaintiffs identified as supporting their claim could not be considered commercial advertising, that the Plaintiffs never alleged that the communications materially affected any consumer's purchasing choices, and that the Plaintiffs never alleged that the statements even reached consumers at all. (DE 38 at 17–18; DE 43 at 15.) The Plaintiffs responded by maintaining that the complaint properly alleged that the Defendants used social media and other communications to disseminate false

statements and representations related to customers' purchasing decisions and negatively impacting OrthoPediatrics's market share and reputation. (DE 39 at 27.)

Because the Defendants have not only alleged that the statements underlying the Plaintiffs' claim do not violate the Lanham Act but even more fundamentally are not commercial advertising or promotion, the Court starts its analysis with whether the statements alleged can be classified as commercial advertising or promotion. The Lanham Act does not define the term and the Seventh Circuit has not settled on a specific definition either. But it has, however, settled on certain principles. For instance, it has recognized that "commercial advertising or promotion" covers more than just traditionally published or broadcast materials and that a court determining whether certain communications fall under the term's umbrella should look to practices within the industry in which the parties find themselves. *See Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 521–22 (7th Cir. 2012) ("there are industries in which promotion—a systematic communicative endeavor to persuade possible customers to buy the seller's product—takes a form other than publishing or broadcasting"). There is also no requirement that the communication be broadly distributed to the public, just that there be some public dissemination as opposed to, for example, simply person-to-person correspondence. *See Sanderson v. Culligan Int'l Co.*, 415 F.3d 620, 624 (7th Cir. 2005) (internal quotations omitted) (citing *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir. 2001) ("§ 43(a) addresses promotional material disseminated to anonymous recipients").

Further, while the Seventh Circuit has not explicitly adopted a test for commercial advertising or promotion, other circuits have looked to a four-part test that requires the communication to be: 1) commercial speech; 2) by a defendant who is in commercial competition with the plaintiff; 3) for the purpose of influencing consumers to buy defendant's

goods or services; and 4) disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry. *See Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 950 (11th Cir. 2017); *Podiatrist Ass'n v. La Cruz Azul de P.R.*, 332 F.3d 6 (1st Cir. 2003); *Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273–74 (10th Cir. 2000).

Relying on these principles and recognized considerations, the Court cannot find, even taking all alleged facts as true and drawing all reasonable inferences in the Plaintiffs' favor, that the Plaintiffs have shown the communications they described in the complaint constitute commercial advertising or promotion under the Lanham Act.

First, there is insufficient evidence that the social media posts or any other statement referenced in the complaint constitute commercial speech. Commercial speech at its core is "speech that proposes a commercial transaction." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014) (citing *Bd. of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 482 (1989)). There is no evidence in the complaint that the cited social media posts or statements attributed to the Defendants proposed a commercial transaction and at no point in their complaint or briefing did the Plaintiffs make even a conclusory allegation that the statements met that core definition. (DE 33 at 14–26, 39–40.)

The Seventh Circuit has held that speech that doesn't serve the core commercial speech function and may contain non-commercial speech, like the comments, shares, and other communications discussed in the complaint, can still qualify as commercial speech under certain circumstances though. It has specifically noted three guideposts for making that determination, "whether: 1) the speech is an advertisement; 2) the speech refers to a specific product; and 3) the speaker has an economic motivation for the speech." *Id.* at 517 (citing *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66–67 (1983) (internal quotations omitted)). Applying those

guideposts to the facts and allegations in the complaint, the Court still concludes that the speech is not commercial. None of the communications advertised anything and none of the communications referred to or promoted a specific product. Most instead referred to the ongoing state court litigation that OrthoPediatrics was involved in at the time the statements were made and served as commentary on the litigation and expressions of the commenters' poor view of OrthoPediatrics. (DE 33 at 14–26.) While the Court, construing the Plaintiffs' allegations in the complaint liberally, could infer a possible economic motivation for a subset of the social media posts, there is, as will be explained in more detail below, no evidence to suggest that the posts were broadly disseminated to consumers or that they had any economic impact. For that reason, the Court finds that an inference of economic intent would be unreasonable on these facts and thus concludes that the Plaintiffs have not provided the Court with enough evidence to suggest that the statements referenced in the complaint can be considered commercial speech. That finding provides enough for the Court to conclude the Plaintiffs have not presented a sufficient Lanham Act claim.

But the Court additionally notes that even if it had found that the communications did constitute commercial speech, it would still have found that there was not enough evidence to support the Lanham Act claim because the Plaintiffs failed to allege or plead facts that showed the statements were made to influence consumers or were disseminated to the relevant purchasing public within the pediatric orthopedic industry, the final two requirements in the test other circuits have adopted for determining commercial advertising or promotion. The Seventh Circuit, while not explicitly adopting those two factors, recognized the importance of such a consideration when it classified commercial advertising or promotion as "a systematic communicative endeavor to persuade possible customers to buy the seller's product." *Neuros*,

698 F.3d at 521–22. The closest the Plaintiffs came in their complaint to making such a showing was their allegation that Mr. Deeter disseminated what the Plaintiffs called "an unsubstantiated hit piece" on social media "to promote, publicize and more widely distribute its false and misleading content." (DE 33 at 23–24.) But that is not enough. While the Plaintiffs referred to Mr. Deeter promoting the piece, they never alleged that his or anyone else's "promoting" reached potential customers or that social media is a place where potential customers in the pediatric orthopedics space go to receive information about companies and products. For that reason, the Court cannot find that any of the communications alleged in the complaint were made for the purpose of influencing consumers to buy defendants goods or services and, even if it could, has no basis to conclude that the posts were disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion in the pediatric orthopedic industry. *See, e.g.*, *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002) ("businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action"); *Lexmark*, 572 U.S. at 133 (holding injury under the Lanham Act occurs when deception of customers causes them to withhold trade from the Plaintiffs).

Finally, the Court notes that there is a third flaw in the Plaintiffs' Lanham Act pleading, insufficient facts to suggest that the allegedly false statements in the communications were material to customer purchasing decisions. *See Dyson, Inc. v. Sharkninja Operating LLC*, 259 F. Supp. 3d 816, 828 (N.D. Ill. 2017); *see also Diamond Sawblades*, 504 F. Supp. 3d at 945 (finding a Lanham Act claim must be dismissed because the plaintiff did not allege how the statements in question would materially affect a consumer's purchasing choice). While the Plaintiffs did allege that the Defendants' conduct harmed them by "tarnishing their reputations"

and implying that "OrthoPediatrics' products were created, designed, and authorized by someone other than Plaintiffs" (DE 33 at 25–26, 29, 39–40), it was not made clear within the complaint that the reputational harm was in the eyes of consumers or that the communications actually translated to any lost sales or other economic harm. The Plaintiffs' only statement about materiality and customers was that the "Defendants' statements also are material as they relate to customers' purchasing decisions." (*Id.* at 40.) The Court finds that statement is a conclusory recitation of a legal requirement for a Lanham Act claim offered without further explanation or support and thus not entitled to the deference generally afforded to statements of fact in a Rule 12(b)(6) analysis. Given the Plaintiffs' insufficient allegations to support their Lanham Act claim, the Court finds the Plaintiffs have not shown they have statutory standing to bring the claim and that the claim must be dismissed as one upon which relief cannot be granted.

### E.    Count IV – Breach of Contract

The Court next moves to the Plaintiffs' first state law claim, breach of contract against Mr. Deeter. The claim is based on Mr. Deeter's allegedly "disparaging false statements and comments" on social media and elsewhere. (DE 33 at 41.) The Defendants both challenged the Court's ability to exercise supplemental jurisdiction over the claim and asserted it was a claim upon which relief could not be granted. (DE 38 at 23–27; DE 43 at 15–16.)

A federal court with original jurisdiction can exercise supplemental jurisdiction over all other claims that are so related to the claims over which the court has original jurisdiction that they form part of the same Article III case or controversy. 28 U.S.C. §1367(a). Courts have interpreted § 1367 to mean that a federal court's "judicial power to hear both state and federal claims exists where the federal claim has sufficient substance to confer subject matter jurisdiction on the court, and the state and federal claims derive from a common nucleus of

operative facts." *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). A loose factual connection between the claims is generally sufficient. *Id.* Further, it is essential that the facts linking the state to the federal claims be "operative," meaning they must be relevant to the resolution of the federal claims. *United States v. Clark*, No. 08 C 4158, 2010 WL 476637, at *1 (N.D. Feb. 3, 2010). Because the Court is dismissing the Plaintiffs' Lanham Act claim, the only claims over which the Court has original jurisdiction are the patent infringement and declaratory judgment of patent infringement claims.

The Plaintiffs provided two arguments in support of a sufficient connection between the breach of contract claim and the patent claims. First, they argued that the derogatory statements about OrthoPediatrics that underly the breach of contract claim against Mr. Deeter "are designed to provide cover for Defendants' patent infringement by misleading the public to believe that OrthoPediatrics is not the innovator in this space." (DE 33 at 28.) Second, the Plaintiffs alleged the evidence underlying the breach of contract claim could be "evidence of the Defendants' willful and egregious conduct such that treble damages should be awarded for the infringement." (DE 39 at 29.) The Defendants conversely insist that the statements and activities related to the state law claims are separate from any considerations about patent infringement. (DE 43 at 15–16.)

The Court agrees with the Plaintiffs. The breach of contract claim is premised on Mr. Deeter's social media postings and other negative comments laid out in the complaint, primarily in relation to the ongoing Florida litigation. While those comments are not directly related to patent infringement, they are at least loosely connected in that they relate to the dispute over the ownership and control of the technology that underlies the '377 Patent. They are also operative

in that they are potentially relevant to understanding the Defendants' willfulness in engaging in patent infringement as well as in understanding the competitive relationship between OrthoPediatrics and Wishbone that led to the Plaintiffs' allegations of infringement. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1933 (2016) (holding that the statute governing patent infringement damages "allows district courts to punish the full range of culpable behavior" and that courts should "take into account the particular circumstances of each case in deciding whether to award damages"); *Droplets, Inc. v. Adobe Sys., Inc.*, 2008 WL 11446843, at *4 (E.D. Tex. Aug 29, 2008) (finding evidence that could prove willful infringement connected state and federal claims for purposes of supplemental jurisdiction involving a patent infringement claim). The Court thus finds there is sufficient overlap to hold that the patent claims and breach of contract claim arise from a common nucleus of operative fact. Having found it appropriate to exercise supplemental jurisdiction, the Court moves to consider whether the Plaintiffs have stated a claim upon which relief could be granted.

To prevail on a breach of contract claim under Indiana law, a plaintiff must show the existence of a contract, a breach of the contract, and damages. *Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 365 (Ind. Ct. App. 2008). The Plaintiffs have properly alleged those elements here. Mr. Deeter's severance agreement with OrthoPediatrics, which is presumed to be a valid contract at this stage, included a provision in which Mr. Deeter agreed that he "will not make any statement now, or anytime in the future, to representatives of any media or any other person or organization, which are disparaging" of OrthoPediatrics or OrthoPediatrics's reputation. (DE 33 at 40; DE 33-3.) The Plaintiffs have both alleged and provided visual evidence of social media and other comments that could be considered to be a breach of that agreement. (DE 33 at 14–26.) They have also properly alleged damages based on that breach.

(*Id.* at 41.) Thus, the Court finds no basis on which to dismiss the Plaintiffs' breach of contract claim.

### F.        Count V – Defamation *Per Se*

The Court next moves to the Plaintiffs' claim for defamation *per se*. The Defendants once again premised their challenge on a lack of supplemental jurisdiction and an alleged failure to state a claim upon which relief could be granted. (DE 38 at 27–31.) For purposes of supplemental jurisdiction, the Plaintiffs' defamation claim is generally premised on the same underlying social media and other statements as their breach of contract claim. The Court thus finds, for the same reasons it gave when analyzing supplemental jurisdiction for the breach of contract claim, that there is a close enough connection between the facts underlying the defamation claim and the facts underlying the patent claims to support supplemental jurisdiction. Having assured itself of supplemental jurisdiction, the Court moves to the merits.

To prevail on a cause of action for defamation in Indiana, a plaintiff must prove four elements: 1) a communication with defamatory imputation; 2) malice, 3) publication, and 4) damages. *Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 206 (7th Cir. 2013) (citing *Trail v. Boys and Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006)). Defamation *per se* exists when a communication imputes criminal conduct, a loathsome disease, misconduct in a person's trade, profession, office, or occupation; or sexual misconduct. *Id.* A plaintiff asserting a claim of defamation must set out the operative facts of the claim within the complaint, including the alleged defamatory statement. *Trail*,  845 N.E.2d at 136–38. And for a statement to be actionable as defamation, "it must be clear that it contains objectively verifiable fact regarding the plaintiff." *Meyer v. Beta Tau House Corp.*, 31 N.E.3d 501, 515 (Ind. Ct. App. 2015).

The parties' arguments about the viability of this count mostly centered on whether the social media posts could be considered to have been asserting content that could be proved true or false and whether someone who shares another's post can be liable for defamation when the shared post contains harmful content. (DE 38 at 29–30; DE 39 at 29–31; DE 43 at 16–18.) But the Court need not resolve those issues because the Plaintiffs' claim suffers from a more fundamental problem. The Plaintiffs never alleged malice, even in a conclusory way, within their complaint in relation to their defamation claim. (DE 33 at 41). In fact, the only place where the Plaintiffs alleged malicious intent in their entire complaint was within their Lanham Act claim. And even there they only connected the malicious intent to Mr. Deeter's decision to pursue litigation against OrthoPediatrics, not to Mr. Deeter's decisions to take to social media to criticize the company. (*Id.* at 40.) Malice is a required element for asserting a claim for defamation in Indiana, and without an allegation or evidence of malicious intent in the communications on which the defamation claim is based, the Court cannot find that the Plaintiffs have presented a claim upon which relief can be granted. *See Trail*, 845 N.E.2d at 136.

### G.   Count VI – Tortious Interference with Contractual Relationships

Moving to the Plaintiffs' tortious interference with contractual relationships claim, the Court is once again presented with the Defendants' arguments for dismissal based on a lack of supplemental jurisdiction and insufficient claim construction. (DE 38 at 31.) Unlike in the prior two claims, however, the Court cannot find sufficient evidence to justify supplemental jurisdiction over this claim. The Plaintiffs' basis for asserting this tortious interference claim is that "Defendants have contacted OrthoPediatrics' licensee customers and made false, misleading, and/or deceptive statements" to them to further their own business and induce contractual breaches with OrthoPediatrics. (DE 33 at 42.) Nowhere in the complaint do the Plaintiffs explain

the content of the conversations the Defendants have allegedly had with these licensee customers, provide any factual allegations to connect those conversations with the alleged patent infringement, or allege that the contacting involved any discussion of the '377 Patent or the Defendants' Accused System. The Court thus finds the Plaintiffs have failed to connect the alleged tortious interference with the patent infringement and have given no basis for a finding that the facts underlying this tortious interference claim arise from the same common nucleus of operative facts as the patent infringement claims. *See Muscarello*, 610 F.3d at 425 (holding the burden of establishing proper jurisdiction is on the party asserting jurisdiction).

The Court also notes that even if it had found it could exercise supplemental jurisdiction, it would still dismiss the Plaintiffs' claim under Rule 12(b)(6). To prove tortious interference with a contractual relationship, a plaintiff must show: 1) the existence of a valid and enforceable contract; 2) the defendant's knowledge of the existence of the contract; 3) the defendant's intentional inducement of breach of the contract; 4) the absence of justification; and 5) damages resulting from the defendant's wrongful inducement of the breach. *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 488 (Ind. Ct. App. 2017). The fourth element of the standard requires the plaintiff to do more than merely assert that the defendant's conduct was unjustified, the plaintiff must actually set forth factual allegations from which it can reasonably be inferred that the defendant's conduct was unjustified. *Id.* "Unjustified" for purposes of a tortious interference with a contractual relationship claim means conduct that is "malicious and exclusively directed to the injury and damage of another." *Id.*

The Plaintiffs failed to meet their burden for this claim by not alleging a sufficient lack of justification for the alleged interference. The Plaintiffs only made the conclusory allegations that the Defendants' "interference was without justification," that it "has caused OrthoPediatrics

damage," and that the "Defendants' actions are harmful, willful, wanton, and undertaken with callous disregard to OrthoPediatrics's interests and contractual relationships." (DE 33 at 42.) Those statements are not only conclusory but also leave the Court to guess at what the actual nature of the contacts were and whether they were justified or unjustified. Thus, the Plaintiffs did not sufficiently allege a key element of the claim, which renders it a claim upon which relief cannot be granted.

### H.      Count VII – Tortious Interference with Prospective Contractual Relationships

The Court finally considers the Plaintiffs' related claim of tortious interference with prospective contractual relationships. Because the Defendants raised the same jurisdictional and claim construction concerns for this claim as they did for the prior claims, the Court undertakes a similar analysis. First, the Court, as it did with the previous tort claim, finds that the facts the Plaintiffs have alleged with respect to this claim are too sparse to allow the Court to determine that it can exercise supplemental jurisdiction. There is once again no specific connection alleged between the contacts with prospective customers and patent infringement, the '377 Patent, or the Accused System. The lack of a stated connection or any inference that can reasonably be drawn to find a connection precludes the Court from exercising supplemental jurisdiction.

The Court also notes that it would still dismiss the claim pursuant to Rule 12(b)(6) even if it did have supplemental jurisdiction. To allege a claim for tortious interference with prospective contractual relationships, a plaintiff must show: 1) the existence of a valid relationship; 2) the defendant's knowledge of the existence of the relationship; 3) the defendant's intentional interference with that relationship; 4) the absence of justification; and 5) damages resulting from the defendant's wrongful interference with the relationship. *Rice v. Hulsey*, 829 N.E.2d 87, 91

(Ind. Ct. App. 2005). Indiana courts have also recognized that there must be some independent illegal action to meet the elements of the tort, meaning that the defendant acted illegally in achieving his end. *Id.* (citing *Watson Rural Water Co., Inc. v. Indiana Cities Water Corp.*, 540 N.E.2d 131, 139 (Ind. Ct. App. 1989)).

The Plaintiffs again did not meet their burden to show they had a claim upon which relief could be granted here. First, the Plaintiffs are clearly required to allege that the Defendants acted illegally in achieving their ends. *See Watson Rural Water Co.*, 540 N.E.2d at 139. The Plaintiffs' only allegation in their complaint tied to illegality is their statement that "Defendants' conduct in interfering with OrthoPediatrics's business relationships was illegal since it utilized actions prohibited by federal statutes and Indiana law." (DE 33 at 43.) That is a conclusory statement offered with no factual allegations to support it. The Plaintiffs argued in their response that to treat that statement as conclusory would be to ignore "the litany of wrongful and unjustified conduct outlined in the [complaint], including publication of false statements, unfair competition and false advertising and breach of contract." (DE 39 at 33.) But the Court finds nothing in the complaint to connect the allegedly illegal conduct cited in the prior counts of the Plaintiffs' complaint to the interference alleged in this claim. The Plaintiffs only alleged the Defendants contacted OrthoPediatrics's licensee customers, not that those contacts were tied at all to the earlier alleged illegal conduct in the complaint. Additionally, even if the Plaintiffs had properly alleged illegal conduct associated with the interference with prospective relationships, the Plaintiffs claim would still fail because they once again gave no indication, outside of conclusory statements, that the contacts were unjustified. (DE 33 at 43.) The Court thus finds the Plaintiffs' tortious interference with prospective contractual relationships must be dismissed.

IV.     **Conclusion**

29

For the foregoing reasons, the Court DENIES the Defendants' motion to dismiss (DE 37) with respect to Counts 1, 2, and 4, and GRANTS the Defendants' motion to dismiss with respect to Counts 3, 5, 6, and 7. In light of that, the Court ORDERS the Plaintiffs' claims for unfair competition and false advertising (Count 3), defamation *per se* (Count 5), tortious interference with contractual relationships (Count 6), and tortious interference with prospective contractual relationships (Count 7) be DISMISSED. The Court further DENIES the Plaintiffs' motion for leave to file a surreply (DE 53) and the Defendants' motion to file a surreply (DE 59).

SO ORDERED.

ENTERED: August 31, 2021

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court